UNITED STATES of America,
Plaintiff–Appellee,

v.

James Edward COLKLEY,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Jamison Henry JOHNSON,
Defendant–Appellant.

Nos. 89–5050, 89–5051.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 8, 1989.

Decided March 27, 1990.

Beth Mina Farber (argued), Asst. Federal Public Defender, Baltimore, Md., for defendants-appellants.

Geoffrey R. Garinther (argued), Asst. U.S. Atty., Baltimore, Md., for plaintiff-appellee.

Fred Warren Bennett, Federal Public Defender, Larry A. Nathans, Asst. Federal Public Defender, Harold I. Glaser, Baltimore, Md., on brief, for defendants-appellants.

Breckinridge L. Willcox, U.S. Atty., Gregg L. Bernstein, Asst. U.S. Atty., Baltimore, Md., on brief, for plaintiff-appellee.

Before WIDENER and WILKINSON, Circuit Judges, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.

WILKINSON, Circuit Judge:

James Edward Colkley and Jamison Henry Johnson appeal their convictions for bank robbery, 18 U.S.C. § 2113(a), bank larceny, 18 U.S.C. § 2113(b), and assault during a bank robbery, 18 U.S.C. § 2113(d). Johnson contends that the district court should have suppressed incriminating post-arrest statements made by him because the affidavit submitted in support of the warrant for his arrest did not contain certain potentially exculpatory information known to the affiant. In addition, both appellants maintain that the trial judge improperly excused a jury member during trial and impermissibly admitted certain evidence.

We hold that the Johnson affidavit was not tainted by the affiant's failure to include within it all potentially exculpatory information. Johnson's incriminating statements were properly admitted because Johnson made no showing that the affiant intended to mislead the magistrate by omitting information, and because the warrant with the omitted information would in any event have been supported by probable cause under the "totality of the circumstances" test articulated in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Finding no merit in appellants' remaining claims, we affirm the judgment of the district court.

I.

On May 5, 1988, two armed men robbed the Baltimore Federal Financial Bank in Pikesville, Maryland. One of the robbers held up the lobby tellers, while the other robber took money from the bank vault. Bank officials reported to police authorities that the robbers stole $71,442, and that their take also included 32 twenty-dollar bait bills and several malfunctioning dye packs.

Based on bank surveillance photographs and interviews with eyewitnesses, the F.B.I. developed composite descriptions of the two robbers. Appellant Colkley became a suspect based on one of the composite descriptions and his past bank robbery activity.

On May 23, an anonymous informant telephoned the F.B.I. to report that appellants Johnson and Colkley had told him that they recently robbed a bank in Baltimore County. The informant's account of this robbery was remarkably consistent with the robbery at Baltimore Federal Financial. The informant stated that Johnson stole money from the vault while Colkley held up the lobby tellers. He also said that the robbers had taken a dye pack that failed to operate. Finally, the informant reported that a reliable associate had seen over $60,000 in Johnson's house during May 1988.

Based on this information, agents began surveillance of Johnson's home in June 1988. They observed two cars parked outside Johnson's home which they determined belonged to Johnson's brother and Colkley. An investigation revealed that Colkley purchased his car the day after the bank robbery for $4,780 in cash which he had removed from a brown envelope containing more cash. The agents also learned that Johnson's brother, accompanied by John-

son, had purchased a car four days after the robbery for $2,551.50 in cash. In addition, on June 14 an agent conducting surveillance observed Johnson purchase a van for $3,100 in cash. An examination of the cash used in this purchase disclosed one of the bait bills taken in the robbery.

In the meantime, investigators prepared two identification photospreads containing six pictures each. Colkley's photograph was in one photospread, Johnson's in the other. Two eyewitnesses positively identified Colkley as the lobby robber, and two others said he "looked similar" to the lobby robber. None of the six eyewitnesses were able to identify Johnson, however; three identified other individuals in the Johnson photospread as similar to the vault robber, and three could identify no one.

On June 23, 1988, a United States Magistrate issued separate warrants for the arrest of Colkley and Johnson. The warrant applications were accompanied by affidavits executed by Special Agent Thomas Moore of the F.B.I. Both affidavits contained eyewitness descriptions of the robbery, composite descriptions of the two suspects, an account of the surveillance of Johnson's home and the information gained by investigating the automobile purchases, and a summary of the photospread identifications of Colkley. In addition, the Johnson affidavit included information learned from the anonymous informant. The Johnson affidavit did not recount that the eyewitnesses failed to identify Johnson in the photospread.

Colkley and Johnson were arrested separately. Police arrested Colkley in the car he purchased the day after the robbery. An inventory search of the car revealed two handguns which were later introduced at trial. Johnson was arrested at his residence. After initially disavowing knowledge of the bank robbery, he made numerous incriminating statements concerning his involvement in it. In response to an agent's question about the location of the robbery money, he replied "I had my fun, I am broke." Confronted with evidence of the bait bill discovered during his purchase of the van, he stated, "the van got me."

Finally, he told an agent, "when I get out of jail I would have learned, and I won't make the same mistake again." A subsequent search of Johnson's home revealed a .38 caliber bullet that was admitted at trial.

Prior to trial, Johnson challenged the affidavit used in support of his arrest warrant. He claimed that the affidavit was defective because it failed to note that numerous witnesses did not identify him in a photographic spread, and because agent Moore based the composite height description of the vault robber—allegedly Johnson—on the testimony of only one witness and in disregard of the testimony of other witnesses who claimed that the vault robber was shorter. Based on these allegations, Johnson requested and received an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to determine if agent Moore had deliberately or with reckless disregard for the truth excluded material information. After the *Franks* hearing, the district court ruled that even with the inclusion of the omitted information on the Johnson photographic spread, probable cause existed for the issuance of the arrest warrant. The court also found that agent Moore had not intentionally misrepresented Johnson's height and that, in any event, discrepancies in height descriptions were common and in this case were immaterial.

On November 16, 1988, a jury returned guilty verdicts against both Colkley and Johnson for bank robbery, bank larceny, and assault during a bank robbery. 18 U.S.C. § 2113(a), (b), & (d).

Colkley and Johnson appeal their convictions.

## II.

We first address the district court's refusal to exclude Johnson's incriminating post-arrest statements. We agree with the district court that the omitted information in the affidavit did not require suppression of these statements. We reach this conclusion by different means, however, and hold that the district court need not have held a *Franks* hearing on the integrity of the

affidavit because there was no substantial preliminary showing that the affiant intended to mislead the magistrate, and because inclusion of the omitted information would not have defeated probable cause in any event.

### A.

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that in certain narrowly defined circumstances a defendant can attack a facially sufficient affidavit. The *Franks* Court recognized a strong "presumption of validity with respect to the affidavit supporting the search warrant," 438 U.S. at 171, 98 S.Ct. at 2684, and thus created a rule of "limited scope," *id.* at 167, 98 S.Ct. at 2682. The rule requires that a dual showing be made which incorporates both a subjective and an objective threshold component. In order even to obtain an evidentiary hearing on the affidavit's integrity, a defendant must first make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Id.* at 155–56, 98 S.Ct. at 2676–77. This showing "must be more than conclusory" and must be accompanied by a detailed offer of proof. *Id.* at 171, 98 S.Ct. at 2684. In addition, the false information must be essential to the probable cause determination: "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171–72, 98 S.Ct. at 2684–85. The *Franks* test also applies when affiants omit material facts "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir.1986).

If a *Franks* hearing is appropriate and an affiant's material perjury or recklessness is established by a preponderance of the evidence, the warrant "must be voided" and evidence or testimony gathered pursuant to it must be excluded. *Id.* at 156, 98

S.Ct. at 2676. A warrant that violates *Franks* is not subject to the good-faith exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984).

### B.

The district court granted Johnson's request for a *Franks* hearing based on its conclusion that

> Johnson has made a strong showing that the FBI agent who applied for the warrants intentionally omitted the information in the warrant application that none of the six eye witnesses identified Johnson. There was an omission of fact that the court regards as an important fact. ... [T]he omission ... may have affected the outcome of the magistrate's probable cause determination.

The district court held that agent Moore's omission of the Johnson photospread information satisfied the "intent" prerequisite to a *Franks* hearing without considering whether Moore intended the omission to mislead the magistrate or omitted the information in reckless disregard of its misleading effect. Johnson argues on appeal that the district court's decision to hold a *Franks* hearing was correct because intentional omission is all that this element of *Franks* requires.

We think this formulation fails to capture the meaning of *Franks* or the realities of the warrant application process. Affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation. However, every decision not to include certain information in the affidavit is "intentional" insofar as it is made knowingly. If, as the district court held, this type of "intentional" omission is all that *Franks* requires, the *Franks* intent prerequisite would be satisfied in almost every case.

■ *Franks* clearly requires defendants to allege more than "intentional" omission in this weak sense. "The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit." *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir.1987). *Franks* protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate. *See Reivich*, 793 F.2d at 961. To obtain a *Franks* hearing the defendant must show that the omission is the product of a "deliberate falsehood or of reckless disregard for the truth." *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. "[M]ere[ ] negligen[ce] in ... recording the facts relevant to a probable-cause determination" is not enough. *Id.* at 170, 98 S.Ct. at 2683.

■ This case presents a question of omission rather than commission on the part of the agent. While omissions may not be *per se* immune from inquiry, *see United States v. Owens*, 882 F.2d 1493, 1498–99 (10th Cir.1989); *Reivich*, 793 F.2d at 961, the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory. This latter situation potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit. The potential for endless rounds of *Franks* hearings to contest facially sufficient warrants is readily apparent.

Here Johnson made no showing, and the district court possessed no evidence, that agent Moore had the requisite intent to mislead. The most that the record here reveals about Moore's failure to include the photospread information is that he did not believe it to be relevant to the probable cause determination. At the very worst, he was merely negligent in disclosing all relevant considerations to the magistrate. His acts fell far short of the level of flagrant police action *Franks* is designed to prevent, and a hearing under that decision was not required.

Nor could the district court have inferred intent or recklessness from the fact of omission itself. Some courts have recognized this type of inference if the omitted material was "clearly critical" to the finding of probable cause. *See United States v. Martin*, 615 F.2d 318, 328 (5th Cir.1980). We have doubts about the validity of inferring bad motive under *Franks* from the fact of omission alone, for such an inference collapses into a single inquiry the two elements—"intentionality" and "materiality"—which *Franks* states are independently necessary. But in any event, as the next subsection shows, the omitted information here lacked materiality and thus was far from being "clearly critical" to the probable cause determination.

### C.

Neither the omitted information nor the allegedly skewed composite height description was material to the probable cause determination. For this reason also, a *Franks* hearing was not required.

■ The district court misstated the type of materiality that *Franks* requires. It believed that the affiant's omission was material because it "may have affected the outcome" of the probable cause determination. However, to be material under *Franks*, an omission must do more than potentially affect the probable cause determination: it must be "necessary to the finding of probable cause." *Franks*, 438 U.S. at 156, 98 S.Ct. at 2676. For an omission to serve as the basis for a hearing under *Franks*, it must be such that its inclusion in the affidavit would defeat probable cause for arrest. *See Reivich*, 793 F.2d at 961. Omitted information that is potentially relevant but not dispositive is not enough to warrant a *Franks* hearing. *Id.* at 962.

In determining whether the affidavit with the omitted information would be supported by probable cause, we must apply the "totality of the circumstances" test of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This test re-

quires "a practical, commonsense decision whether, given all the circumstances set forth in the affidavit," *id.* at 238, 103 S.Ct. at 2332, there is probable cause to believe the suspect committed an offense. *See Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

The Johnson affidavit including the omitted data still contains more than ample information to establish probable cause to arrest Johnson. The affidavit stated that Colkley was a suspect in the robbery based on photographic identification and past robbery activity. The car Colkley purchased with cash the day after the robbery was detected outside Johnson's home. In addition, Johnson himself was involved in cash purchases of two cars within a month of the robbery. The second car was paid for with one of the bait bills taken during the robbery. Finally, the Johnson affidavit recited the informant's tip to the police that Johnson had admitted committing a bank robbery that bore a remarkable resemblance to the one at Baltimore Federal Financial. Although the informant was anonymous, his tip was sufficiently detailed and sufficiently corroborated by independent police work to come within the standards of probable cause articulated in *Gates,* 462 U.S. at 238, 241–42, 103 S.Ct. at 2332, 2333–34.

The inclusion of the photographic identification information does not affect this probable cause to arrest Johnson. The inability of any of the witnesses to make a positive identification on the Johnson photospread, and the inconsistencies in witness identifications of those individuals who looked "similar" to the vault robber, undercuts any exculpatory value in the photospread information. And to the extent that the Johnson photospread information has exculpatory value, it is not enough to defeat probable cause when weighed against the informant's tip and Johnson's car purchase with a stolen bait bill.

Finally, inclusion of all the testimony concerning the vault robber's height does not affect the probable cause determination. Not surprisingly, witness testimony concerning the vault robber's height var-

ied, with estimates ranging from 5′6″ to 5′10″. These small discrepancies in height lack significance in the probable cause determination, particularly in light of the other evidence that points to probable cause to arrest Johnson.

### III.

■ In addition to being unsupported by the logic of *Franks,* Johnson's contention that the Fourth Amendment requires an affiant to include all potentially exculpatory evidence in the affidavit must be rejected on more general grounds.

In effect, Johnson asks us to import the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), into the warrant application process. *Brady* and its progeny establish that the prosecutor has a duty to disclose to the defendant exculpatory evidence, defined as material evidence that would create a reasonable doubt as to the correctness of a guilty verdict at trial. *See United States v. Agurs,* 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976); *see also United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985).

We must be cautious, however, about importing the panoply of *Brady* protections from trial practice into warrant application proceedings. The *Brady* rule derives from due process and is designed to ensure fair criminal trials. *Bagley,* 473 U.S. at 675, 105 S.Ct. at 3379; *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. It is at trial that the accused is cloaked with the presumption of innocence and may put the state to its proof beyond a reasonable doubt. By contrast, the probable cause determination in *Franks,* which derives from the Fourth Amendment, involves no definitive adjudication of innocence or guilt. Because the consequences of arrest or search are less severe and irremediable than the consequences of an adverse criminal verdict, a duty to disclose potentially exculpatory information appropriate in the setting of a trial may be less compelling in the context of an application for a warrant.

There are other differences in the duties imposed by *Brady* and *Franks.* The con-

stitutional obligation to disclose material exculpatory information in the *Brady* context attaches regardless of the intent of the prosecutor, and constitutional error can be found without a demonstration of moral culpability. *Agurs*, 427 U.S. at 110, 96 S.Ct. at 2400. A *Franks* violation, however, requires such a showing: "deliberate falsehood" or "reckless disregard for the truth." *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. The "overriding concern" of *Brady* is with the "justice of the finding of guilt" that is appropriate at trial. *Agurs*, 427 U.S. at 112, 96 S.Ct. at 2401. *Franks*, by contrast, recognizes that the information an affiant reports from an informant may not ultimately be accurate, and is willing to tolerate such a result so long as the affiant did not deliberately mislead the magistrate. 438 U.S. at 165, 171–72, 98 S.Ct. at 2681, 2684–85. These disparate standards of intent reflect differences in the consequences of error in the two contexts, and recognize that the non-lawyers who normally secure warrants in the heat of a criminal investigation should not be burdened with the same duty to assess and disclose information as a prosecutor who possesses a mature knowledge of the entire case. To state the differences between the duties of disclosure is not, of course, to condone deliberate misrepresentations to magistrates, but simply to point out that ground cannot be shifted gracefully between obligations at trial and those in the warrant application process.

Moreover, a requirement that all potentially exculpatory evidence be included in an affidavit would severely disrupt the warrant process. The rule would place an extraordinary burden on law enforcement officers, who might have to follow up and include in a warrant affidavit every hunch and detail of an investigation in the futile attempt to prove the negative proposition that no potentially exculpatory evidence had been excluded. It would perforce result in perniciously prolix affidavits that would distract police officers from more important duties and render the magistrate's determination of probable cause unnecessarily burdensome. In addition, a broad duty of inclusion would turn every arrest or search into a warrant contest. Such consequences would, in turn, discourage reliance on warrants, a result the Supreme Court has stated should be avoided in shaping Fourth Amendment doctrine. *Gates*, 462 U.S. at 236–37, 103 S.Ct. at 2331–32.

In short, a rule requiring affiants to disclose all potentially exculpatory information has nothing to recommend it. Unless the defendant makes a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate, the Fourth Amendment provides no basis for a subsequent attack on the affidavit's integrity.

## IV.

■ The defendants raise several further issues that fall within the district court's discretion. First, they contend that the district court should not have excused a member of the jury without an evidentiary hearing to determine the juror's fitness. However, the district court clearly did not abuse its discretion in ruling that the juror's failure to appear for thirty minutes of testimony warranted substitution without further inquiry. *See United States v. Corsino*, 812 F.2d 26, 33 (1st Cir.1987).

■ Defendants next argue that the district court should not have admitted evidence of the handguns found in Colkley's car and the .38 caliber bullet found in Johnson's home. Defendants claim that the guns and bullet constitute "other bad acts" evidence under Fed.R.Evid. 404(b). But the evidence was probative of the crimes charged against defendants, not other bad acts. It was thus admissible.

■ Finally, the trial court did not abuse its discretion in admitting evidence of Johnson's sudden acquisition of wealth after the bank robbery. Such evidence is relevant and generally admissible, especially when, as here, there has been a showing that the defendant was impecunious prior to the crime. *United States v. Pensinger*, 549 F.2d 1150, 1152 (8th Cir.1977).

## V.

For the foregoing reasons, the judgments of conviction are

AFFIRMED.