Robert **LOMBARDI**, Plaintiff–Appellant,

v.

**CITY OF EL CAJON**; Steven Shakowski; Does 1 through 30, inclusive, Defendants–Appellees.

No. 96–55073.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 1997.

Decided June 30, 1997.

Michael R. Marrinan, Adler & Marrinan, San Diego, California, for plaintiff-appellant.

Robert L. Friedenberg, Fredrickson, Mazeika & Grant, San Diego, California, for defendants–appellees.

Before: RYMER and THOMAS, Circuit Judges; PANNER, District Judge.[*]

Opinion By Judge RYMER; Partial Concurrence and Partial Dissent by Judge PANNER.

RYMER, Circuit Judge:

■ This appeal involves a claim of qualified immunity in a civil rights action seeking damages from a law enforcement officer who decided to leave information about the informants' relationship with the suspect out of his application for a search warrant. The search turned up methamphetamine, drug paraphernalia, and cash, as a result of which Robert Lombardi was prosecuted by California authorities. However, charges were dropped when a Superior Court judge granted Lombardi's motion to suppress after holding a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978),[1] and finding a constitutional violation because the information was left out deliberately and had it been disclosed, the judge would not have issued the warrant.

Lombardi then sued the officer, Steven Shakowski, under 42 U.S.C. § 1983 for damages for violating his Fourth Amendment rights. The district court ordered that Shakowski was entitled to qualified immunity because Lombardi failed to show that intentional or reckless false statements or omissions were made with the intent to mislead the judge who issued the warrant. We hold that specific intent to deceive the issuing court is not an element (in addition to a substantial showing of deliberate or reckless falsehood or omission that is material to the probable cause determination) that the plaintiff must show in order to survive summary judgment on a claim of qualified immunity in a civil rights action seeking damages for a *Franks* violation. Therefore, we reverse the judgment entered in Shakowski's favor.

---

[*] Honorable Owen M. Panner, Senior District Judge for the District of Oregon, sitting by designation.

1. Under *Franks*, a criminal defendant is entitled to an evidentiary hearing to challenge the validity of a search warrant if (1) there are "allegations of deliberate falsehood or of reckless disregard for the truth"; and (2) "if, when the material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains [in]sufficient content in the warrant affidavit to support a finding of probable cause." *Franks*, 438 U.S. at 171–72, 98 S.Ct. at 2684, 57 L.Ed.2d at 682.

This requires us to consider two pretrial rulings. First, the district court held that Shakowski was not collaterally estopped from asserting qualified immunity by the state court's *Franks* ruling, but that Lombardi was precluded from relitigating the materiality of one false statement made by Shakowski in the affidavit. We conclude that collateral estoppel does not apply to either party on any issue. Second, the district court also granted partial summary judgment to Shakowski on the omissions from the affidavit, which we affirm because it was not objectively unreasonable to omit facts that weren't plainly material when the warrant application was made.

I

Detective Shakowski, along with other members of the Crime Suppression Unit of the El Cajon Police Force, executed a search warrant on Lombardi's home August 14, 1992. Shakowski's affidavit in support of the search warrant application describes information obtained from two confidential informants, referred to as "CI–1" and "CI–2," that they had seen saleable quantities of methamphetamine, scales, baggies and the like used for the sale of methamphetamine, and sales transactions going down in Lombardi's house. The affidavit states that Shakowski wants to keep the identity of CI–1 and CI–2 anonymous because "the informants have requested me to do so and because it is my experience that said informants suffer physical, social and emotional retribution when their identities are revealed."

During the search, one-quarter pound of methamphetamine, scales, packaging, pay/owe sheets, and $4,000 in cash were seized. As a result, Lombardi was arrested and charged with possession and possession for sale of methamphetamine.

He moved to suppress evidence found in the search under Cal.Penal Code § 1538.5, and a *Franks* hearing was held to determine whether false statements had been made or material facts had been omitted from the search warrant application such that, when they were either redacted or put back into the affidavit, probable cause did not exist.

The judge who presided had issued the warrant.

Both of the informants, Denise Cole and Wade Cole, testified, as did Shakowski. Both Coles said Shakowski lied about the information he claimed to have obtained from CI–1 and CI–2, but the judge found that the Coles were incredible, and Shakowski was credible, on this point.

However, the evidence showed that when he prepared the affidavit, Shakowski was aware that Lombardi had been arrested for physically assaulting CI–1 in 1991. This was not disclosed. While Shakowski's affidavit makes no mention of any relationship between CI–1 and CI–2, or between CI–1 and Lombardi, or CI–2 and Lombardi, he knew that CI–1 was Denise Cole, Lombardi's battered ex-girlfriend, who was angry at Lombardi because Lombardi had recently taken back a car he had lent to her; and CI–2 was Wade Cole, her son, against whom Lombardi had recently brought charges for burglary, resulting in Wade's incarceration in juvenile hall. Wade had told Shakowski that he disliked Lombardi because he mistreated his mother and gave her drugs, but the affidavit doesn't say so. Shakowski's affidavit also omits information about a previous, unsuccessful investigation of Lombardi. Finally, Shakowski admitted that he had not "met with" CI–1/Denise for an extensive interview, as his affidavit states, but had only spoken with her by telephone.

The state court found that the false statement that Shakowski "met with" Denise Cole was not material, but that Shakowski made deliberate omissions about the identities of CI–1 and CI–2; the omissions were made in "good faith" to protect the informants; and that the affidavit, with the omissions added back in, did not state probable cause to issue the warrant due to the informants' questionable motivations in inculpating Lombardi. Based on these findings, the judge concluded that he had been misled, and he granted Lombardi's motion to suppress. The State ultimately dismissed all charges.

Lombardi then brought suit in state court

against Shakowski,[2] seeking damages under 42 U.S.C. § 1983 for a violation of his Fourth Amendment rights. Shakowski removed the action to federal court. Both parties moved for summary judgment. Lombardi claimed that the state court's finding of a *Franks* violation entitled him to partial summary judgment on Shakowski's liability for the search; Shakowski contended that the state court's ruling as to Shakowski's "good faith" motives entitled him to qualified immunity from Lombardi's suit for damages. The district court determined that neither party was entitled to summary judgment on the basis of collateral estoppel: Lombardi, because the *Franks* hearing had not fully addressed whether Shakowski intended to deceive the magistrate; and Shakowski, on the ground that the state court's "good faith" comments were dicta.

The court then denied the cross-motions for summary judgment. In doing so, it applied a two-part test crafted before our decision in *Hervey v. Estes*, 65 F.3d 784 (9th Cir.1995), in which we clarified the standard for surviving summary judgment on a defense claim of qualified immunity in a civil rights action charging judicial deception in violation of *Franks*. The first prong of the district court's test asked:

> Was the warrant affidavit so deficient, as a consequence of the omissions, that no reasonable officer either would have believed that probable cause existed or would have applied for the warrant?

The second prong asked:

> Did Shakowski make intentional false statements or make the omissions recklessly or with the intent to deceive the issuing court with respect to probable cause?

On the first prong of its test, the court decided that probable cause was not so lacking from Shakowski's affidavit that a reasonably well-trained officer would not have applied for the search warrant with the

omissions added back in; accordingly, it granted partial summary judgment for Shakowski on the omissions. On the second prong of its test, the court found that there was a dispute of fact as to whether Shakowski intentionally made false statements in the warrant affidavit and that, if he did, and if those statements vitiated probable cause, he would have committed a *Franks* violation and lost his qualified immunity. If he made false statements, the court further concluded, he may also have made the omissions with the intent to deceive or with a reckless disregard for the truth, so both motions for summary judgment were denied.

That left for trial the question:

> Did Shakowski intentionally and knowingly include false statements, or make omissions, in his search warrant affidavit with the purpose of misleading the issuing court as to the existence of probable cause?

The court bifurcated the issues of qualified immunity and damages. At the start of the jury trial on qualified immunity, the court ruled that the parties were not free to relitigate the findings made by the state court on the issue of probable cause, therefore Lombardi could not introduce evidence on the materiality of the "met with" misstatement; and that Lombardi could not call an expert to testify about Shakowski's intent. Lombardi stipulated that he could not meet his burden of proof under these rulings.[3] The district court then granted qualified immunity to, and entered judgment for, Shakowski. Lombardi timely appealed.

## II

Lombardi first contends that he was entitled to partial summary judgment on the issue of Shakowski's liability for the unlawful search of his home and seizure of his property because Shakowski intentionally omitted material facts from the search warrant affidavit which, added to the affidavit, negated probable cause. In such circumstances,

---

**2.** Lombardi also sued the City of El Cajon, California, but the district court dismissed the claim and Lombardi has not appealed that ruling.

**3.** The precise question to which Lombardi stipulated that the answer was "no" was:

> Did Officer Shakowski knowingly and intentionally, or with a reckless disregard for the truth, make false statements or omissions in his search warrant affidavit in order to mislead the state court judicial officer as to the existence of probable cause?

Lombardi submits, an officer loses the shield of qualified immunity. Lombardi suggests that judgment in his favor was appropriate either under the doctrine of collateral estoppel in light of the state court's finding that the search violated the Fourth Amendment under *Franks*, or because the undisputed facts preclude a grant of qualified immunity.

## A

### (1)

Lombardi argues that collateral estoppel applies to suits brought under § 1983, *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and that federal courts must apply state collateral estoppel law to determine whether a prior state proceeding should result in issue preclusion in a subsequent § 1983 action. Shakowski counters that collateral estoppel does not apply here because, as the district court concluded, the state court did not find that he intentionally misled the judicial officer who issued the warrant. Regardless, Shakowski contends, the state court hearing was conducted pursuant to California law, whereas *Franks* is controlling in federal court.

There is little merit to Shakowski's argument that the state court's ruling was under a different standard, as the court found that Shakowski's omissions were deliberate and that they vitiated probable cause. This fully comports with *Franks*, which the state court itself acknowledged it was following. And, as we shall explain, we disagree that intent to mislead the magistrate is required to overcome a summary judgment on a claim of qualified immunity in a civil rights suit based on *Franks;* therefore, this difference affords no basis for denying preclusive effect to the state court's ruling. However, we believe that collateral estoppel is not dispositive in this case, for other reasons.

■ The state court's ruling is binding on us only if it is binding under state collateral estoppel law. *See Haring v. Prosise*, 462 U.S. 306, 313–14, 103 S.Ct. 2368, 2372–73, 76 L.Ed.2d 595, 603–04 (1983); *Allen*, 449 U.S. at 103–04, 101 S.Ct. at 411, 66 L.Ed.2d at 318–19. In California, a party is generally estopped from relitigating an issue of fact or

law that was conclusively and necessarily determined in a prior action between the same parties. *Anderson–Cottonwood Disposal Serv. v. W.C.A.B.*, 135 Cal.App.3d 326, 332, 185 Cal.Rptr. 336, 340 (1982). Typically, collateral estoppel will apply "if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]." *People v. Sims*, 32 Cal.3d 468, 484, 186 Cal.Rptr. 77, 87, 651 P.2d 321 (1982) (citation omitted) (brackets in original).

■ Here, the issue decided in the criminal proceeding—that evidence must be suppressed because the omissions Shakowski made were deliberate and material—is not identical to the issue of qualified immunity. In civil rights actions, qualified immunity turns on the objective unreasonableness of the law enforcement officer's conduct in light of clearly established law. The state court, ruling in the context of a motion to suppress in Lombardi's criminal proceeding, had no occasion to make this determination.

Further, even though the parties do not question finality, we have previously held that suppression rulings under Cal.Penal Code § 1538.5, if not followed by a conviction or an acquittal, are not final judgments under California law and therefore are without collateral estoppel effect in a subsequent civil suit. *Heath v. Cast*, 813 F.2d 254, 258 (9th Cir.), *cert. denied*, 484 U.S. 849, 108 S.Ct. 147, 98 L.Ed.2d 103 (1987); *cf. McGowan v. City of San Diego*, 208 Cal.App.3d 890, 896, 256 Cal.Rptr. 537, 539 (1989) (holding in the context of a case where a conviction followed a suppression ruling unfavorable to the defendant that Cal.Penal Code § 1538.5 rulings may have collateral estoppel effect in subsequent civil suits); *Ayers v. City of Richmond*, 895 F.2d 1267, 1272 (9th Cir.1990) (applying collateral estoppel in subsequent civil suit where defendant had pleaded guilty and did not appeal adverse suppression rulings under Cal.Penal Code § 1538.5). Thus, two requirements are missing in this case, and Shakowski is therefore not collaterally

estopped from asserting that a reasonable officer could have believed that the omissions were immaterial.

#### (2)

 Turning the tables, Lombardi argues that the district court erred in letting Shakowski invoke the doctrine of collateral estoppel to preclude Lombardi from contesting the state court's finding that Shakowski's false statement that he "met with" CI–1 was not material. He is correct, because the prior ruling was not final, and because there is an exception to collateral estoppel "when '[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action[.']" *Anderson–Cottonwood,* 135 Cal. App.3d at 332, 185 Cal.Rptr. at 340 (quoting *Restatement (Second) of Judgments* § 28(1)). This includes the prevailing party, who "was not aggrieved and could not appeal the judgment." *Id.* Since Lombardi prevailed at the suppression hearing, he could not have appealed the state court's finding that the false "met with" statement was not material. Therefore, collateral estoppel does not preclude Lombardi from relitigating the materiality of the false "met with" statement.

#### B

Even if collateral estoppel does not apply, Lombardi contends that the district court should have granted partial summary judgment in his favor on the alternative ground that the undisputed facts show that the search violated *Franks* and the Fourth Amendment. He maintains that both elements of a *Franks* violation were established on undisputed facts.

We disagree that this compels a ruling in Lombardi's favor on the merits, as it puts the cart before the horse. We are obliged first to consider whether Shakowski is entitled to qualified immunity because the immunity is " 'an immunity from suit rather than a mere defense to liability.' " *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)). This is true in a *Franks*-type suit as in any other.

#### III

 Lombardi argues that "intent to mislead" is not an extra element that he must show in order to survive summary judgment on qualified immunity, as the district court held. The court made "intent to deceive the issuing court with respect to probable cause" the second prong of its two-prong test for overcoming summary judgment and an element that Lombardi would have to prove at trial on the issue of qualified immunity. It was Lombardi's inability to prove intent to deceive that led the court to confer qualified immunity on Shakowski and to enter judgment in his favor.

Lombardi contends that imposing an "intent to deceive" requirement is inconsistent with *United States v. Stanert,* 762 F.2d 775 (9th Cir.), *amended by* 769 F.2d 1410 (9th Cir.1985), where we held that deliberate or reckless omissions of facts that tend to mislead can negate a facial showing of probable cause, and with *Hervey,* which set out the elements that a plaintiff must prove to overcome a claim of qualified immunity in a civil rights action alleging judicial deception. Neither mentions an additional element of subjective "intent to mislead" beyond the knowing and deliberate, or reckless, nature of the false statement or omission. Lombardi further notes that an "intent to mislead" requirement is at odds with the Supreme Court's insistence that objective factors determine these issues. *See United States v. Leon,* 468 U.S. 897, 919–23, 104 S.Ct. 3405, 3418–21, 82 L.Ed.2d 677, 696–99 (1984); *see also Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531–32 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Shakowski responds that omissions are different.[4] He argues that *Hervey* and *Branch*

---

4. Both parties focus their arguments on omissions, because the district court found triable issues of fact on whether false statements were made. Therefore, its rulings in the main were concerned with Shakowski's failure to disclose information about the informants. However, the

*v. Tunnell,* 937 F.2d 1382 (9th Cir.1991), which set the standard in this circuit for qualified immunity in civil rights actions alleging judicial deception, are limited to affirmative statements. In Shakowski's view, intentionally omitting facts is not enough to cause a loss of qualified immunity unless the omissions are made to enhance the contents of the affidavit and to mislead the magistrate. Both the district court and Shakowski reason that when *Franks* is extended to omissions, its overarching principle—the deterrence of deception of judicial officers—compels the conclusion that omissions must be made with the intent to mislead or with a reckless disregard for the truth. Shakowski submits that this approach is consistent with *Stanert,* and that we should in any event follow the lead of the Fourth and Eighth Circuits, which find a *Franks* violation for omissions only when the officer intended to mislead. *See United States v. Colkley,* 899 F.2d 297 (4th Cir.1990); *United States v. Reivich,* 793 F.2d 957 (8th Cir.1986).

We disagree that intent to mislead the issuing court is an element of the plaintiff's showing on top of the subjective intent requirement from *Franks* that the *Hervey* standard already incorporates into the qualified immunity analysis. In *Franks,* the Court held that a false statement can only negate probable cause if it is material and is made "knowingly and intentionally, or with reckless disregard for the truth." *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2675–76. We have long measured whether a defendant in a criminal case can challenge a facially valid affidavit by whether "(1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *United States v. Lefkowitz,* 618 F.2d 1313, 1317 (9th Cir.), *cert. denied,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980). If that showing is met and after an evidentiary hearing is held, "the court concludes that the magistrate or judge in issuing the warrant was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth,

then suppression is an appropriate remedy." *Stanert,* 762 F.2d at 780; *see also Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 698–99.

Stanert brought omissions into the *Franks* fold in this circuit. The officer's affidavit in *Stanert* failed to say that while the suspect had been arrested in Panama, he hadn't been convicted of any offense. We held that the Fourth Amendment "mandates that a defendant be permitted to challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead." *Stanert,* 762 F.2d at 781. As we explained, "[by] reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning." *Id.* Thus, what is required (for a *Franks* hearing and, in turn, under *Hervey,* for a plaintiff to overcome summary judgment on a claim of qualified immunity) is "a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *Stanert,* 762 F.2d at 781; *see also United States v. Meling,* 47 F.3d 1546, 1554 (9th Cir.) (applying the *Franks* test to omissions and finding sufficient "a substantial showing that the FBI deliberately omitted information concerning [cooperating witness's] credibility"), *cert. denied,* —— U.S. ——, 116 S.Ct. 130, 133 L.Ed.2d 79 (1995).

Faced with how to deal with an alleged *Franks* violation in the context of qualified immunity from suit under § 1983, we recognized in *Branch,* 937 F.2d at 1385, that "[t]here is a tension . . . between. *Harlow*'s emphasis on 'objective reasonableness' and cases in which the 'clearly established law' at issue contains a subjective element, such as motive or intent." For this reason, we decided in *Branch* and *Hervey* to embrace a heightened standard for pleading, and for overcoming summary judgment on a defense claim of qualified immunity, that parallels the threshold showing we require a defendant to

---

district court required Lombardi to prove that Shakowski subjectively intended to deceive or mislead the issuing court in the making of both false statements and omissions.

make in order to have an evidentiary hearing on a *Franks* challenge in a criminal proceeding. As we summarized the test:

> [A] plaintiff can only survive summary judgment on a defense claim of qualified immunity if the plaintiff can *both* establish a substantial showing of a deliberate falsehood or reckless disregard and establish that, without the dishonestly included or omitted information, the magistrate would not have issued the warrant. Put another way, the plaintiff must establish that the remaining information in the affidavit is insufficient to establish probable cause. The showing necessary to get to a jury in a section 1983 action is the same as the showing necessary to get an evidentiary hearing under *Franks*.

*Hervey*, 65 F.3d at 789.

"Intent to mislead the issuing court" is not among the elements that *Hervey* identifies. Shakowski points to no authority for adding "intent to mislead" as an element when intentionally *false statements* are at stake, and we see no basis for doing so. However, he notes that both the Fourth and Eighth Circuits have indicated that they will not find the *Franks* standard met in a criminal proceeding unless there is a showing that *omissions* are "designed to mislead, or that [they] are made in reckless disregard of whether they would mislead, the magistrate." *Colkley*, 899 F.2d at 301; *see Reivich*, 793 F.2d at 961. As *Colkley* explained, "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." 899 F.2d at 300. We have embraced the same reasoning, recognizing in *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir.1987), that "[t]he mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit." But instead of imposing a heightened proof requirement only in the case of omissions—as do *Colkley* and *Reivich* in the criminal context—*Branch* and *Hervey* impose a heightened pleading and proof requirement, including the subjective intent element from *Franks*, for commissions as well as omissions. It is this standard that a plaintiff must meet on the civil side in order to over-come summary judgment on a defense claim of qualified immunity.

Because the district court required Lombardi to show that Shakowski made false statements or omissions in order to mislead the issuing court as to the existence of probable cause (and Lombardi lost because he couldn't make this showing), we must reverse the court's order granting Shakowski qualified immunity and entering judgment in his favor. On remand, the district court will have to consider anew the question whether, under *Hervey* and *Stanert*, Lombardi survives summary judgment on qualified immunity. It will have to do so without reference to any factor of subjective intent other than whether Shakowski intentionally or recklessly made false statements or material omissions. As no one contests the court's ruling that triable issues exist with respect to whether false statements were made, trial on that issue will presumably take place. However, the only issue will be whether Shakowski intentionally or recklessly reported falsely what CI–1 and CI–2 told him-not whether he did so with intent to mislead the magistrate.

## IV

Lombardi contends that the district court also asked the wrong question, and got the wrong answer, on the first prong of its two-prong qualified immunity test: "Would a reasonably well-trained officer in Shakowski's position have known that his affidavit, taken with the omissions 'added back' failed to establish probable cause and that he should not have applied for the warrant." As a result, Lombardi maintains, the court was led astray and should not have granted partial summary judgment on qualified immunity to Shakowski.

### A

As we have indicated, the posture of this case makes it difficult to deal cleanly with the district court's rulings, because its two-prong test was adopted without reference to *Hervey*. However, the standard that the court did adopt for the first prong of its test came from *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271, 280–81 (1986). There, the Supreme Court held that the same objective reasonableness standard

that it had applied in the context of a criminal suppression hearing in *Leon* defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest. Under that test, the question is "whether a reasonably well-trained officer in [the officer's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345, 106 S.Ct. at 1098, 89 L.Ed.2d at 281.

Lombardi argues that the district court went off track by importing this objective reasonableness inquiry into a *Franks*-type case where the heart of the wrongdoing is the making of intentional false statements or material omissions. In this respect, he submits, *Franks* situations are different from those in which a warrant may be deficient (as in *Malley*), but not on account of false statements or material omissions. Lombardi therefore reasons that an officer who violates *Franks* is, per se, not acting with objective reasonableness. For this he relies on the Supreme Court's opinion in *Leon*, holding that the good faith exception to the exclusionary rule does not apply to *Franks* violations, and our own decisions in *Hervey* and *Branch*, explaining that an officer who submits an affidavit with false statements and no accurate information sufficient to constitute probable cause cannot be said to have acted in an objectively reasonable manner.

Shakowski argues that the district court got it right because there is a difference between finding that probable cause *is* lacking (as will be the case when a *Franks* violation is found in a criminal proceeding), and finding that no "objectively reasonable" officer could have thought so—on which qualified immunity turns in a civil rights action. Thus, he submits, the *Malley* standard properly constitutes the first prong of the test for qualified immunity whenever the § 1983 claim is that a search or arrest was unconstitutional because probable cause was lacking for the warrant.

We agree with Lombardi that *Hervey* controls how the analysis must proceed. However, *Hervey* itself turned on objective reasonableness, as do all issues of qualified immunity.[5] In *Hervey*, the plaintiff claimed that the search warrant affidavit falsely reported that a deputy had smelled P2P or acetone and that the deputy had completed courses in narcotics investigation and clandestine laboratory investigation when he hadn't. We overturned the application of qualified immunity on summary judgment because we concluded that the falsely included facts constituted the entire substance of the affidavit and that, without them, a neutral magistrate would not have issued the warrant. In so doing, we emphasized that "[i]t is only objectively unreasonable for

---

**5.** As the Supreme Court emphasized in *Anderson*, summarizing its qualified immunity jurisprudence from *Harlow* to date:

> When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." On the other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties. Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See, e.g., Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"); *id.*, at 344–345, 106 S.Ct. at 1097–98

(police officers applying for warrants are immune if a reasonable officer could have believed that there was probable cause to support the application); *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (officials are immune unless "the law clearly proscribed the actions" they took); *Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984); *Harlow v. Fitzgerald*, 457 U.S. at 819, 102 S.Ct. at 2738; cf., e.g., *Procunier v. Navarette*, 434 U.S. 555, 562, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978). Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738 assessed in light of the legal rules that were "clearly established" at the time it was taken, *id.* at 818, 102 S.Ct. at 2738.

483 U.S. at 638–39, 107 S.Ct. at 3038, 97 L.Ed.2d at 529–30 (most internal citations omitted).

a law enforcement officer to deliberately or recklessly misstate facts material to the probable cause determination." *Hervey,* 65 F.3d at 789. Only false statements were at issue in *Hervey,* but *Stanert* makes the same principle applicable to omissions. 762 F.2d at 781. Thus, it is only objectively unreasonable for a law enforcement officer deliberately or recklessly to make material omissions.

The facts in *Hervey* made the materiality inquiry easy, because the importance of the false information was obvious and, without it, nothing remained in the affidavit. The officer fabricated perceptions of sight, smell and sound, which was "unforgivable," 65 F.3d at 791; "indeed it was thoroughly unprofessional." *Id.* Without the falsely included facts, all that remained was unproven, uncorroborated and unreliable informant information that was entitled to no weight, and which no neutral magistrate could possibly have credited. *Id.* at 790–91. But whether the magistrate would not have issued the warrant with false information redacted, or omitted information restored, is not always so obvious. In cases of "outrageous" conduct such as *Hervey,* where probable cause is clearly lacking without the false statements, the officer "cannot be said to have acted in an objectively reasonable manner and the shield of qualified immunity is lost." *Id.* at 788 (quoting *Branch,* 937 F.2d at 1387) (internal quotation marks omitted). However, in other cases, particularly where omissions are involved, materiality may not have been clear at the time the officer decided what to include in, and what to exclude from, the affidavit. In such cases, when it is not plain that a neutral magistrate would not have issued the warrant, the shield of qualified immunity should not be lost, because a reasonably well-trained officer would not have known that the misstatement or omission would have any effect on issuing the warrant.

### B

Applying these standards to the facts in this case, it is undisputed that Shakowski deliberately and knowingly omitted from the affidavit information that might identify the

informants in the affidavit.[6] He did this for the purpose of protecting them from retaliation by Lombardi, not for the purpose of misleading the magistrate; but this does not matter because Shakowski's subjective motivations are irrelevant. The information was left out intentionally, not negligently, and that's enough to satisfy the subjective intent requirement of *Franks* and *Hervey.*

In the affidavit, Shakowski expressed his belief that methamphetamine was being kept at Lombardi's house. His belief was based entirely on information given to him by CI–1 (with whom he said he "met" and had an "extensive interview") and CI–2. Shakowski knew, but did not say, that CI–1 and CI–2 were related to each other and had joint and separate reasons for disliking Lombardi. Lombardi has therefore made a substantial showing that Shakowski intentionally omitted facts required to prevent the statements that he said were made by CI–1 and CI–2, and his own conclusions, from being misleading.

■ Whether Shakowski deliberately left out material information is a much more difficult question. The state judge thought that he had; the district judge thought that he hadn't. Looking to the legal rules that were clearly established when the application was made, we cannot say that a magistrate would not have issued the warrant if he had been told all that Shakowski knew about the informants.

If he had been told, the magistrate would have known that CI–1 was Lombardi's former girlfriend who was mad at him; that CI–2 was CI–1's 17–year–old son who was in jail on charges brought by Lombardi and who disliked Lombardi anyway; and that Shakowski had been tipped to talk to CI–1 and CI–2 by CI–1's sister, whose son was also facing a felony charge for his role in the burglary of Lombardi's house. However, the magistrate also would have known that the statements of CI–1 and CI–2 were given independently, three months apart, without CI–1 and CI–2 having spoken to each other or knowing what the other had told Shakowski; the statements were detailed as to quantity of drugs and money, were based on

---

**6.** Because the district court's ruling that triable issues of fact exist as to the falsity of statements is unappealed, we address only the omissions.

personal observation, and recounted different things about Lombardi's drug activities; and the statements corroborated each other. In addition, CI–2's statement that he had seen drugs when he burglarized Lombardi's house was against his penal interest. Given these indicia of reliability, see *Illinois v. Gates,* 462 U.S. 213, 233–34, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527, 545 (1983), the indicia of hostility would not have been plainly material under established law. See, e.g., *United States v. Willis,* 647 F.2d 54, 58–59 (9th Cir.1981) (probable cause not vitiated and no *Franks* violation occurred when officer omitted information that the informant, who supplied much of the incriminating information, was the suspect's former live-in girlfriend who was currently having an affair with, and being supplied Seconal by, another narcotics officer); *Lefkowitz,* 618 F.2d at 1317 & n. 4 (no *Franks* violation where officer omitted that an informant was the suspect's ex-wife with possible motives "of spite, vengeance, and perhaps a desire to obtain advantageous property settlement information via an IRS investigation" but IRS files showed that tax offenses had been committed);[7] cf. *Stanert,* 762 F.2d at 781–82 (modified affidavit including disposition of defendant's arrest that was omitted fails to provide substantial basis for probable cause to search residence).[8] Because we have not drawn clear lines for when omissions are material, and information about ulterior motives and biases of informants has not inevitably (or even frequently) led to a *Franks* violation for vitiating probable cause, a reasonable officer in Shakowski's position could have failed to recognize that the facts he decided not to disclose would have an effect on the probable cause determination. It is not objectively unreasonable to omit facts that aren't material. Therefore, we leave standing the district court's partial summary judgment in Shakowski's favor on the omissions.

V

We conclude that Shakowski is not collaterally estopped from claiming qualified immunity and that Lombardi is not entitled to judgment either on account of collateral estoppel or because a *Franks* violation has been shown. Subjective intent to deceive or mislead the court is not an element that Lombardi must show in addition to a substantial showing of deliberate falsity or reckless disregard for the truth in order to survive summary judgment on qualified immunity. We therefore reverse the order granting qualified immunity and judgment in Shakowski's favor. It is only objectively unreasonable for a law enforcement officer to omit facts that are material to the determination of probable cause. Because the facts Shakowski decided to leave out of the affidavit are not such that the magistrate would plainly have not issued the warrant had they been disclosed, Shakowski is entitled to qualified immunity on the omissions.

Each party shall bear its costs.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.

PANNER, District Judge, Concurring in Part and Dissenting in Part:

I respectfully dissent. I would affirm the district court's judgment in its entirety.

7. See also *United States v. Phillips,* 727 F.2d 392, 397–99 (5th Cir.1984) (informant was credible despite fact that she was the suspect's wife and had recently quarreled with and left him); *United States v. Hodges,* 705 F.2d 106, 108 (4th Cir.1983) (estranged girlfriend was credible informant despite possibility that she harbored ill will for suspect); *United States v. Copeland,* 538 F.2d 639, 642–43 (5th Cir.1976) (probable cause exists despite father-in-law's "axe to grind" with suspect, because information provided was based on firsthand knowledge, it was detailed, and officer knew informant to be a good citizen).

8. Both *United States v. Hall,* 113 F.3d 157 (9th Cir.1997), and *Meling,* 47 F.3d 1546, came down after Shakowski applied for the Lombardi warrant. The state trooper who applied for the warrant in *Hall* recklessly failed to disclose that the informant who provided the only information implicating the defendant in drug transactions had several convictions, including a conviction for falsely reporting a crime. The magistrate knew little else other than what the informant said, so we upheld suppression of the evidence under *Franks* violation. In *Meling,* a wiretap warrant was obtained in part on the basis of information supplied by an informant who had old crimes of dishonesty and impure motives—an interest in reward money—that weren't disclosed. However we held that such things don't necessarily make liars of informants, and that there remained a substantial basis for probable cause in light of other evidence that wasn't undermined.

The majority correctly holds that Shakowski is entitled to qualified immunity with respect to the omissions. The majority, erroneously in my opinion, also holds that this case must be remanded for the district court to reconsider whether Shakowski is entitled to qualified immunity for alleged misstatements in his search warrant affidavit.

The majority finds error because the district court required Lombardi to prove at trial that Shakowski made the alleged misstatements with the intent to mislead the state court judge. The district court was preparing to try the issue before a jury when Lombardi stipulated that he could not prove that Shakowski "knowingly and intentionally, or with a reckless disregard for the truth, [made] false statements or omissions in his search warrant affidavit in order to mislead the state court judicial officer as to the existence of probable cause." Based on Lombardi's stipulation, the district court entered judgment in Shakowski's favor.

The majority concedes that the only real issue is whether Shakowski intentionally or recklessly reported falsely what the confidential informants told him. The informants contended that Shakowski deliberately lied about his conversations with them. Based on the facts in this case, if Shakowski lied about what the informants told him, he obviously intended to deceive the magistrate. There were no other allegations to support the warrant.

Even if the majority is correct that the district court should not have required proof of Shakowski's intent to deceive the magistrate, the error, if any, is irrelevant under these facts. When Lombardi stipulated that he could not meet the burden of proof established by the district court, in effect he was conceding that he could not prove Shakowski had lied. It makes no sense to return this matter to the district court to resolve whether Shakowski lied, because that's the very issue the district court offered to submit.

There may be cases in which it would be error to require the plaintiff to prove intent to deceive the magistrate, but this is certainly not one. This circuit's decisions require that the plaintiff make a substantial showing of a deliberate or reckless falsehood or omission that is material to the probable cause determination. *See, e.g., Hervey v. Estes,* 65 F.3d 784, 789 (9th Cir.1995) (referring to "dishonestly included or omitted information"); *Branch v. Tunnell,* 937 F.2d 1382, 1388 (9th Cir.1991) (plaintiff must establish that, but for the dishonesty, the challenged action would not have occurred). These decisions speak of conduct involving dishonesty, as does *Franks. Franks v. Delaware,* 438 U.S. 154, 165, 98 S.Ct. 2674, 2680, 57 L.Ed.2d 667 (1978) (affidavit should be " 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true"). "Dishonesty" ordinarily is associated with an intent to deceive. Aside from the fact that here, requiring proof of intent to deceive had no effect, it's difficult to imagine any case involving alleged *Franks* violations where such an instruction on intent would be inappropriate.

The district court in this case gave Lombardi every opportunity he was entitled to. Lombardi declined to proceed. The district court's judgment was entirely appropriate.