**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: SEARCH WARRANTS SERVED ON
HOME HEALTH AND HOSPICE CARE,
INCORPORATED

UNITED STATES OF AMERICA,

Appellant,

v.

HOME HEALTH AND HOSPICE CARE,
INCORPORATED,
Appellee.

No. 96-4813

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(MISC-95-18-5-H)

Argued: June 2, 1997

Decided: September 5, 1997

Before HALL and NIEMEYER, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** G. Norman Acker, III, Assistant United States Attorney,
Raleigh, North Carolina, for Appellant. David Dart Queen, OBER,

KALER, GRIMES & SHRIVER, Baltimore, Maryland, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, John S. Bowler, Assistant United States Attorney, Anne M. Haynes, Assistant United States Attorney, Raleigh, North Carolina, for Appellant. Robert W. Biddle, OBER, KALER, GRIMES & SHRIVER, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Home Health and Hospice Care, Inc., successfully challenged eight search warrants under Franks v. Delaware, 438 U.S. 154 (1978). The magistrate judge who initially issued the warrants found not only that the supporting affidavit contained recklessly false material, but also that without the false material, he would not have found probable cause and issued the warrants. The district court agreed and ordered the return of the seized property. The government appeals contending (1) that the district court's findings of fact were clearly erroneous, and (2) that even when redacted to delete the false material, the warrants were supported by probable cause. Because we find no clear error in fact finding and agree with the magistrate judge who originally issued the warrants that as redacted they are not supported by probable cause, we affirm the order of the district court.

I

On January 13, 1995, the government applied to Magistrate Judge Alexander B. Denson for eight warrants to search eight offices of Home Health and Hospice Care, Inc. ("Home Health") for evidence of Medicare fraud, Medicaid fraud, wire fraud and mail fraud. In support of the application, the government submitted a "Master Affidavit" signed by Jimmie L. Burgess, an Internal Revenue Service

2

Special Agent, and Teresa E. Gwiazdowski, a Federal Bureau of Investigations Special Agent, both of whom were part of a joint state-federal task force. William Berlin, a Financial Investigator with the Medicaid Investigation Unit of the North Carolina Department of Justice, was also identified in the Master Affidavit as having participated in the investigation. The Master Affidavit asserted that there was probable cause to believe that criminal fraud had been committed at the eight Home Health locations. Magistrate Judge Denson issued the warrants, which were executed on January 19, 1995. Approximately 5 million documents were seized.

Three months later, the Master Affidavit was unsealed and examined by Home Health and its attorneys. On August 16, 1995, Home Health filed a motion for a hearing under Franks v. Delaware, 438 U.S. 154 (1978), and for return of property under Federal Rule of Criminal Procedure 41(e), contending that the Master Affidavit contained several false statements made with reckless disregard for the truth and that without those statements the affidavit did not sufficiently establish probable cause. On August 28, the United States filed its opposition to the motion, arguing that Home Health had not made the substantial preliminary showing necessary to entitle it to a Franks hearing. The motion was assigned to Magistrate Judge Denson, who ruled on September 25 that Home Health had made the preliminary showing required by Franks and ordered a hearing.

Before the hearing, the government filed a motion on October 24, 1995, for reconsideration of the court's September 25 order granting a Franks hearing, arguing that Home Health had not established that the Master Affidavit would be insufficient to show probable cause if the alleged falsehoods and omissions were corrected. The motion for reconsideration was denied, and the government appealed to the district court. Home Health moved to strike the appeal because it actually challenged the September 25 order granting a Franks hearing, not the denial of the motion for reconsideration. Accordingly, Home Health argued the appeal was untimely, having been filed well beyond the 10-day deadline imposed by local rule. Home Health also maintained that the government's appeal was not from a final order, but from a procedural order granting a hearing. The district court struck the appeal, concluding that the magistrate judge had granted no substantive relief and that therefore there was no appealable order.

3

Magistrate Judge Denson conducted a Franks hearing on October 31 and November 7, 1995, and allowed the parties to file supplemental briefs based on evidence received at the hearing. On April 4, 1996, the magistrate judge granted Home Health's motion for return of property. He ruled that the Master Affidavit contained false statements and omitted important facts and that in making the statements and omitting the facts the affiants showed reckless disregard for the truth. He concluded that when false statements and material omissions were corrected, the Master Affidavit failed to demonstrate probable cause that a crime had been committed. The magistrate judge found the following facts:

1. The Master Affidavit claimed that Confidential Informant number 1 (CI-1), described Home Health's practice of using Post-it**TM** Notes "to identify caregiver notes that need to be changed, altered, and/or falsified . . . to meet billing standards." CI-1 later identified himself to Home Health as Bobby Shoemake, a Home Health employee. Investigators admitted that Mr. Shoemake did not say that Home Health used the Post-it**TM** Notes to identify records that needed to be falsified. Instead, that was an inference drawn by law enforcement agents, which, the magistrate judge concluded, was attributed to Mr. Shoemake with at least reckless disregard for the truth. The magistrate judge also found, based on Mr. Shoemake's testimony and Investigator Berlin's interview notes, that Mr. Shoemake had not stated that the Post-it**TM** Notes were used to identify records which needed to be changed to meet billing standards, and that the Master Affidavit's contrary assertion was made with at least reckless disregard for the truth.

2. The Master Affidavit asserted that "CI-1 stated that the caregiver notes are returned to the original caregiver whenever possible to be altered by that caregiver so that when they are placed into the chart it would be very difficult to detect the alterations at a later time." The magistrate judge, however, found that Investigator Berlin's interview notes recorded that difficulty of detection was merely a possible consequence of Home Health's practices, not the motivation for it. Investigator Berlin admitted that this was a more

4

accurate description of what Mr. Shoemake had said. The magistrate judge found that the inaccurate attribution to Mr. Shoemake was made with at least reckless disregard for the truth.

3. The Master Affidavit asserted that CI-1 (Mr. Shoemake) had "personal knowledge of employees working after hours for the purposes of altering and/or changing documents relative to alleged care provided to recipients." The magistrate judge, however, found that "Mr. Shoemake stated that although he was concerned about Home Health employees working on charts after hours because he believed there was adequate time to work on charts during the work day, he did not know why the employees were there or what they were doing." Investigators testified that they had no recollection of Mr. Shoemake ever asserting personal knowledge of why Home Health employees were working after hours. The magistrate judge found that Mr. Shoemake's reports to law enforcement had been misrepresented with at least reckless disregard for the truth.

4. The Master Affidavit asserts that Medicare and Medicaid require a signed plan of treatment before initial care can be given. Part of the fraud attributed to Home Health in the Master Affidavit was the provision of initial care before treatment plans were signed. Investigator Berlin admitted at the hearing, however, that initial care may be given based on verbal orders from a physician, and testified that he had informed Special Agents Burgess and Gwiazdowski of that fact. Special Agent Burgess admitted that he had known as much. The magistrate judge concluded that the Medicare and Medicaid requirements had been misrepresented with at least reckless disregard for the truth.

5. The Master Affidavit set forth examples of records from six Home Health offices of patient records that allegedly lacked proper documentation. The Master Affidavit then asserted that "in all the above cited instances, Medicare and/or Medicaid were billed for services not rendered." Investigator Berlin admitted that there was no evidence of

5

billing for services not rendered, although there may have been problems with documentation. Although Agents Burgess and Gwiazdowski asserted that there were instances of bills for services not rendered, they did not identify any. The magistrate judge concluded that the statement, "Home Health billed for services not rendered," was inaccurate and included in the Master Affidavit with at least reckless disregard for the truth.

6. The Master Affidavit introduced Home Health as having been the subject of a 1989 investigation into false claims. Home Health was said to have engaged in"inappropriate and incorrect billings and submissions" resulting in payments to which Home Health was not entitled. What the final draft of the Master Affidavit did not include, but prior drafts did, was the fact that the investigation did not reveal any fraudulent intent, did not result in a criminal prosecution, and was settled voluntarily by Home Health repaying the relevant amounts. Though Investigator Berlin testified that the resolution of the 1989 investigation was removed from the final draft to present a neutral opinion, the magistrate judge found that implausible, especially in light of the testimony that the 1989 investigation had been described in the Master Affidavit in order to support a finding of probable cause. The magistrate judge concluded that information on the 1989 investigation was omitted with reckless disregard for the misleading effect its absence would have in the probable cause determination.

7. The Master Affidavit included information given by CI-3 relative to Home Health's billing practices. The dates of CI-3's employment at Home Health were not given, but the recent dates of CI-3's interviews with law enforcement officials were given, creating the impression that CI-3's information was recent. In fact, CI-3 had not worked for Home Health since 1992, and when government agents stipulated that it knew as much, the magistrate judge announced without objection that information attributed to CI-3 was stale and would not be considered. The magistrate judge found that CI-3's employment dates were omitted with at least

6

reckless disregard for the misleading effect such omission would have.

8. The Master Affidavit asserted that Home Health had billed for services to a patient which were (or would have been) provided after the patient's death. However, Home Health presented "persuasive evidence that it had <u>not</u> claimed to render any services after this patient's death nor had it billed for any such services." Although the investigating agents did not know this, they also made no attempt to verify their information before including it in the Master Affidavit, which they admitted they very easily could have done by contacting the state agency. The magistrate judge noted that the "validity of a search warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and disclose," and concluded that the agents included the information about the "dead patient" with at least reckless disregard for the truth.

Under these factual findings and after setting aside the false information and considering the omitted information, the magistrate judge noted that the affidavit "takes on a totally different character." He concluded that the corrected Master Affidavit did not support a finding of probable cause and thereupon granted Home Health's motion for return of seized property.

On appeal to the district court, the government gave as its only grounds for appeal that "the Court's finding following a <u>Franks</u> hearing that false information was included in the search warrant knowingly and intentionally or with reckless disregard for the truth is contrary to fact and law." In its brief, however, filed more than two months after its appeal time had expired, the government shifted its argument, no longer contesting the magistrate judge's ultimate factual findings but contending that Home Health should not have been given a <u>Franks</u> hearing because it had not made "a proper `substantial preliminary showing' that the alleged false statements were made `knowingly and intentionally,' or in `reckless disregard for the truth.'" With respect to the omissions, the government also contended that Home Health was not entitled to a <u>Franks</u> hearing because it failed to make the preliminary showing that "such omissions would have affected the

7

finding of probable cause," arguing that "[e]ven if these alleged omissions had been included in the search warrant affidavit, probable cause would still have existed."

Affirming the magistrate judge, the district court noted that it had not found a single case where "otherwise justified relief" was vacated on the basis that the hearing from which it stemmed should not have been held. The court found no reason to disturb its earlier conclusion that the order granting a Franks hearing was not appealable.

On August 12, 1996, the government filed a motion for reconsideration, in which it asked the district court to hold a new hearing and revisit the merits of the order directing a return of property. Despite Home Health's objection, the district court ordered a hearing and specifically informed the parties that it wanted to hear their assessment of the procedural aspects of the case, a synopsis of"why the government persists in continuing to fight this battle in view of Magistrate Judge Denson's clear order of April 4, 1996," and other matters as the parties desired.

Following that hearing, the district court denied the motion for reconsideration and ordered the government to "forthwith return the property to Home Health." The district court noted that while parties are generally entitled to have the district court's de novo review of a magistrate judge's decision, a failure to object timely would constitute a waiver of that right and would preclude its appellate review of the magistrate judge's decision. Nevertheless, the district court "decided that under United States v. George, and in an abundance of caution and fairness, the government did not waive the right to a substantive review and will revisit the appeal of Magistrate Judge Denson's order . . . on the substantive/meritorious aspects of the[Franks] hearing." On the merits, the court concluded that the Franks hearing was properly ordered, and it agreed "in all respects with the findings of Magistrate Judge Denson's order." This appeal followed.

II

In appealing to this court, the government relies on jurisdiction granted by 18 U.S.C. § 3731 as well as by 28 U.S.C. § 1291. Our appellate jurisdiction under § 3731, however, depends on a certifica-

8

tion to the district court by "the United States attorney . . . that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding," and no such certification appears in the record in this matter. More importantly, no criminal proceeding has yet been initiated, and therefore § 3731 is not even applicable. See 18 U.S.C. § 3731 ("An appeal by the United States . . . from a decision or order . . . in a criminal proceeding"). The motion for return of property was a civil proceeding, notwithstanding that it was brought pursuant to the Federal Rules of Criminal Procedure. See United States v. Garcia, 65 F.3d 17, 18 n.2 (4th Cir. 1995). Accordingly, our jurisdiction is proper only under 28 U.S.C. § 1291, since the district court entered a final order disposing of a proceeding under Federal Rule of Criminal Procedure 41(e).

III

Federal Rule of Criminal Procedure 41(e) provides that "[a] person aggrieved by an unlawful search and seizure . . . may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property." In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that defendants may challenge the affidavits upon which search warrants are based under the Fourth and Fourteenth Amendments, and that properly challenged warrants may be voided. To entitle a defendant to a Franks hearing, he must make a substantial preliminary showing that a warrant was procured through false statements intentionally or recklessly made, and that such statements were necessary for establishing probable cause. False statements include information intentionally or recklessly omitted. See United States v. Colkley, 899 F.2d 297, 301-02 (4th Cir. 1990). Because other pre-trial mechanisms exist to protect innocent citizens, the defendant's burden in establishing the need for a Franks hearing, based on either false statements or material omissions, is a heavy one. See United States v. Jeffus, 22 F.3d 554, 558 (4th Cir. 1994). At a Franks hearing, the moving party must prove by a preponderance of the evidence (1) that statements in the affidavit supporting the warrant were false (or that omissions were misleading) and were included intentionally or at least with reckless disregard for the truth and (2) that the corrected affidavit does not satisfy the legal requirements for probable cause that "there is a fair probability that contraband or evi-

9

dence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). If that showing is made,"the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Franks, 438 U.S. at 156.

While we review de novo the legal question of whether a search warrant and its supporting affidavit are legally sufficient, we accord a neutral and detached magistrate judge's judgment about whether probable cause exists substantial deference. United States v. Oloyede, 982 F.2d 133, 138 (4th Cir. 1992).

IV

On the first prong of the Franks inquiry-- whether the Master Affidavit contained false statements or material omissions, and whether their inclusion (or omission) amounted to intentional falsehood or reckless disregard for the truth -- the government contends that the magistrate judge's factual findings, which the district court adopted entirely, are clearly erroneous. We address each part of this prong, first the findings of false statements and then the findings of the requisite intent.

The government argues first that many of the statements which the magistrate judge found to be false were in fact true. But our review of the statements in question indicate that the magistrate judge was not clearly erroneous. Investigator Berlin's notes record that Mr. Shoemake said the use of Post-it Notes was to identify caregiver notes which are "incomplete, incorrect, or not signed" and need to be "pulled out to be corrected." He did not say that their use was to falsify records, as the Master Affidavit suggested. And all three investigating agents testified that Mr. Shoemake did not use the word "falsify." Further, it appears that Mr. Shoemake never said the use of Post-it Notes was to meet billing standards as the affidavit indicates. Although the government now argues, perhaps correctly, that Home Health's practice does in fact relate to billing, that observation has little to do with whether a corporate insider reported that fact. The Master Warrant's assertion that documents were changed to meet billing standards clearly connotes wrong-doing, a connotation that Mr. Shoemake did not in fact communicate to government agents.

10

Likewise, Investigator Berlin's interview memorandum and the hearing testimony support the magistrate judge's conclusion that Mr. Shoemake never said that Home Health chose to make changes as it did <u>because</u> that method would be difficult to recognize. Instead, the investigating agents agreed that Mr. Shoemake had merely said that difficulty of distinguishing original notes from subsequent changes was a result of Home Health's practice. Again, the difference is significant: one connotes a fraudulent intent which Mr. Shoemake did not assert or imply.

The magistrate judge was likewise on firm ground in finding that the Master Warrant falsely asserted that "CI-1 has personal knowledge of Home Health . . . employees working after hours for the purposes of altering and/or changing documents." At the hearing, the magistrate judge could find no evidence to support the assertion. To the contrary, Mr. Shoemake testified that he knew employees were working after hours but did not know what they were doing. Investigator Berlin's notes and the other agents' testimony corroborated Shoemake's claim. The magistrate judge had clear support for the conclusion that the Master Affidavit falsely reported those facts.

Finally, the government appropriately admits (1) that the magistrate judge was correct in finding that the Master Affidavit inaccurately described Medicare and Medicaid requirements that plans for treatment be signed before treatment may begin, and (2) that the Master Affidavit falsely asserted that "Medicare and/or Medicaid were billed for services not rendered."

The government contends, however, that even if the various statements described above were false, the magistrate judge was clearly erroneous in finding that the statements were placed in the Master Affidavit with reckless disregard for the truth. Again we conclude that the magistrate judge's findings are not clearly erroneous.

With respect to the statements imputed to Mr. Shoemake, the agents generally agreed that the statements had been falsely attributed. In light of the totality of the circumstances which the magistrate judge viewed in the hearings, including multiple misstatements and apparent gamesmanship on the government's part, it was not unreasonable to conclude that the investigation of Home Health was

11

carried out in a way which displayed a reckless disregard for the truth. In fact, it appears that Mr. Shoemake was attributed knowledge which he explicitly told the agents he did not have, at least with regard to after-hours activities at Home Health. The magistrate judge reasonably concluded that the facts indicated a decision by the agents to "re-word[ ] Mr. Shoemake's statement to make Home Health's conduct appear more suspect . . . with at least reckless disregard for the truth."

With regard to the misstatements which the government concedes, the government contends that the mistakes were made inadvertently. First, the government asserts that rather than stating that Home Health had billed for services not rendered, the "language should have read `billed for services not authorized.'" That distinction, however, is substantive, and no evidence supports the assertion. Indeed, inadvertence was not the government's position before the magistrate judge, where Agents Burgess and Gwiazdowski asserted that Home Health had in fact billed for services not rendered. Likewise, the government's assertion that Investigator Berlin thought that the Master Affidavit contained a correct description of Medicare and Medicaid regulations does not render the magistrate judge's conclusions clearly erroneous. Indeed, it merely points out that although the investigatory team correctly understood the law, they were, at the least, careless in stating it. In light of the government's admitted understanding of the law, and the fact that the investigating agents said the Master Affidavit was prepared collaboratively, the magistrate judge was not clearly erroneous in concluding that the misstatements were made with reckless disregard for the truth.

The government also takes issue with the magistrate judge's findings that the Master Affidavit contained material omissions. It objects first to treatment of omitted information relating to the 1989 investigation, citing United States v. Colkley, 899 F.2d 297 (4th Cir. 1990), to support its claim that magistrate judge Denson "did not apply th[e] heightened burden of proving `impermissible official conduct' on the part of the agents" in omitting the results of the 1989 investigation. We cannot agree with this argument. Magistrate Judge Denson explicitly recognized that "omissions are less likely to raise concerns regarding official misconduct," expressly citing Colkley. Moreover, Magistrate Judge Denson did not base his findings on the "mere absence of the information in the affidavit," as the government con-

12

tends. Instead, he noted (1) that earlier drafts of the Master Affidavit actually included the results of the 1989 investigation which found Home Health not guilty of fraud, but that information was deleted from the final draft, and (2) that Agent Gwiazdowski described the 1989 investigation in order to support a finding of probable cause. Magistrate Judge Denson was also able to hear and assess the credibility of the government's explanation that information about the 1989 investigation was removed in order to present a "neutral" view of that investigation. In the totality of these circumstances, we believe there was sufficient evidence to conclude that omitting information about the result of the 1989 investigation was misleading and amounted to deliberate falsehood or reckless disregard for the truth.

The government also contends that omitting the results of the 1989 investigation was not material and should not justify either a Franks hearing or an order to return property. As we said in Colkley, "[o]mitted information that is potentially relevant but not dispositive is not enough to warrant a Franks hearing," 899 F.2d at 301, or to warrant ordering a return of property. And while we agree that omitting the results of the 1989 investigation was alone not dispositive in eliminating probable cause, we do not believe that is the only inquiry. Where the only problem with a warrant affidavit is an omission, as was the case in Colkley, the inquiry is properly focused on whether correcting that omission will destroy probable cause. But where an omission is one of many problems with an affidavit, the inquiry must be whether correcting that omission together with all other problems will destroy probable cause. We believe that omitting the results of the 1989 investigation was material when considered in its larger context.

The government next contends that the magistrate judge erred in requiring that information not known to the government -- that Home Health had not in fact billed for services supposedly rendered after a patient's death -- be included in the corrected Master Affidavit when determining whether probable cause exists. As we stated in Colkley, predicating Franks relief on "a failure to include a matter that might be construed as exculpatory . . . potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." 899 F.2d at 301. That, however, does not mean that a court

13

may never predicate Franks relief on the failure to present evidence not known to the government. What it does mean is that the omission of evidence not known to the government may form the basis for Franks relief only when the government's failure to discover and report that evidence amounts to a reckless disregard for the truth.

We believe that the magistrate judge properly understood these limits on evidence not known to the government. He noted that "the validity of the search warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and disclose, to the issuing Magistrate," quoting Maryland v. Garrison, 480 U.S. 79, 85 (1987). He also noted that the federal agents admitted they could have verified their information, a particularly telling observation in light of the fact that they were already coordinating their investigation with state agencies on the particular question of whether Home Health was improperly billing state Medicare and Medicaid agencies. In view of this, and the totality of the circumstances surrounding the preparation of the Master Affidavit, we cannot conclude that the magistrate judge was clearly erroneous in finding that the agents' failure to verify readily available information amounted to a reckless disregard for the truth.

The government does not directly contest the magistrate judge's finding that "the agents' conscious decision to omit CI 3's employment dates was made with at least reckless disregard of whether the failure to include such information would mislead." On the basis of information about CI-3's employment dates, the magistrate judge concluded that information provided by CI-3 was stale and would not be considered in determining whether the corrected Master Affidavit established probable cause. The government now contends, however, that even with that information supplied in the Master Affidavit, the information provided by CI-3 was not stale.

As an initial matter, we note that when the magistrate judge announced that he would not consider information provided by CI-3 because it was stale, the government did not object. Likewise, in noting its appeal to the district court, the government contended only that the magistrate judge's "finding following a Franks hearing that false information was included in the search warrant affidavit knowingly and intentionally or with reckless disregard for the truth is contrary

14

to fact and law." The government did not appeal the magistrate judge's ruling that CI-3's information was stale. The staleness determination was only raised when on June 18, 1996, the government filed a memorandum in the district court, some two months after the magistrate's order of April 4, 1996, and far beyond the applicable time limitations for written and specific objections. See 28 U.S.C. § 636(b)(1) (limiting assignment of error to objections filed within 10 days of being served with magistrate judge's decision and according to rules of court); Fed. R. Civ. P. 72(a), (b) (reiterating 10 day limit; requiring specific written objections and requiring de novo district court review of portions of magistrate judge's disposition "to which specific written objection has been made in accordance with this rule"); E.D.N.C. R. 63.01, 63.02 (requiring "written objections which shall specifically identify the portions of the proposed findings . . . and the basis for such objections" within 10 days or as otherwise ordered). Although the district court revisited the staleness determination, we believe that the government's failure specifically to identify the issue within the ten-day time period provided by statute, the Federal Rules of Civil Procedure, and local rules constitutes a wavier of the right to appellate review. See United States v. Schronce, 727 F.2d 91, 93-94 (4th Cir. 1984); see also United States v. One Parcel of Real Property, 73 F.3d 1057, 1059-60 (10th Cir. 1996) (citing Schronce and holding that general, rather than specific objections do not preserve right to appellate review).

Even considering the issue, however, we have no reason to conclude that the district court acted beyond his authority in finding CI-3's information stale. The government admitted that CI-3 had not worked for Home Health since 1992, and on that basis the magistrate judge concluded that CI-3's information would not establish whether there was probable cause to find present criminal behavior. And although it is true that Medicare and Medicaid records must be maintained for five years, see 42 C.F.R. § 484.48(a), there was nothing in the Master Affidavit to indicate that CI-3's information related to records created within that five year period. In fact, although the parties agree that CI-3 ceased working for Home Health in 1992, the government has still not provided evidence of when the reported falsification of documents occurred. While CI-3 may have been reporting a potentially non-stale 1992 incident, CI-3 may just as well have been reporting a 1985 incident.

15

V

The second prong of the Franks inquiry required the court below to correct the false statements, include material improperly omitted, and determine whether the corrected Master Affidavit is sufficient to establish probable cause. Both parties agree that this is a legal question which we review de novo. While we review de novo for legal sufficiency, however, the legal question is whether there is a "substantial basis" for the magistrate judge's decision. See United States v. Oloyede, 982 F.2d 133, 138 (4th Cir. 1992). We show "substantial deference" to the overall determination of a neutral magistrate of whether probable cause exists. See United States v. Ventresca, 380 U.S. 102, 109 (1965).

Moreover, in this case, we have the additional fact that the magistrate judge who issued the warrant is also the judge who concluded that the warrant, as corrected, would not have justified a finding of probable cause. As the district court said in granting the government a hearing on its August 12, 1996 motion for reconsideration, we are "impressed with the fact that the magistrate judge who conducted the Franks hearing . . . was in fact the same magistrate judge who had originally considered the search warrant and granted same." For that reason, we do not face the problem of having to guess whether Magistrate Judge Denson would have issued a warrant based on the corrected Master Affidavit. Under these circumstances, we believe "substantial deference" to the magistrate judge's decision is even more appropriate.

So considered, we agree with the magistrate judge's conclusion that once the false statements and material omissions are corrected, the Master Affidavit "takes on a totally different character." It first lays out the investigating officers' qualifications, which are not relevant to whether probable cause exists to search Home Health's offices, although they are properly included in the affidavit. It then introduces Home Health, revealing that Home Health was investigated in 1989 and returned money found to have been improperly billed, but noting that the investigation revealed no fraudulent intent and resulted in no criminal prosecution.

The Master Affidavit then asserts what it summarizes as the fraud in Home Health's business practices. It notes that CI-1 reported that

16

Home Health has a practice of using Post-it Notes to identify caregiver notes that need to be altered or corrected for documentation purposes. According to CI-1, caregiver notes were usually returned to the original caregiver for such corrections, but CI-1 reported that other employees knew of office managers sometimes making the needed alterations when the original caregiver was not available. CI-1 reported that some employees worked after hours, but for purposes unknown to CI-1. But, the Master Affidavit then notes that relevant regulations allow care to be given based on either written or oral orders. Before any billing may occur, however, the ordering physician must sign a written order.

The Master Affidavit reports that CI-2 reported to investigators that Beverly Withrow, Home Health's CEO, requested that Home Health employees falsify the records of twenty patients. CI-2 also reported that Michelle Fox, Ms. Withrow's daughter, directed two employees in Home Health's Smithfield office to work on Saturday to alter, correct, and/or create documents for patient records. But CI-2 is nowhere identified. Nor is CI-2's connection to Home Health, or personal knowledge of the reported incident, ever asserted or explained. Moreover, the location of the office where the twenty patients' files were falsified is not given.

The Master Affidavit asserts that on-site reviews of Home Health offices revealed several treatment plans lacking doctor's signatures, others which had been altered or contained no doctor's orders, some patients who were not eligible for Medicare, and others who were not home-bound and thus not eligible for home health services.

With the exception of the information attributed to CI-2, all of the information given by the Master Affidavit is consistent with an innocent, though imperfect system of maintaining millions of records. The information attributed to CI-2, however, was unquestionably incriminating. But assessing the credibility of CI-2's information is difficult or impossible. The only aspect of CI-2's information that finds corroboration is the assertion that some employees were working after hours, allegedly to alter or correct certain documents. Under these circumstances, we believe that the information given was undoubtedly sufficient to raise suspicions about Home Health billing and documentation practices. However, because most of the information in the

17

Master Affidavit is consistent with Home Health's innocence, we agree with the magistrate judge and the district court that the Master Affidavit was insufficient to establish probable cause to believe that evidence of criminal activity could be found at eight Home Health offices.

VI

Although we agree with the district court and the magistrate judge on the merits, we would also affirm the district court's order because the government has waived its right to appellate review of the magistrate judge's legal conclusions. Although the district court must give a full de novo review, including consideration of matters which were not presented before the magistrate judge, parties must still make proper objection to establish the right to district court review. Compare United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992) (holding that district court must consider all arguments directed at issue, including those not presented to the magistrate, "provided that proper objection to the magistrate's proposed finding . . . has been made and the appellant's right to de novo review by the district court thereby established"), with United States v. Schronce, 727 F.2d 91, 9374 (4th Cir. 1984) (holding that failure to file objections to magistrate's report within 10 days constituted waiver of appellate review of the magistrate's decision). We do not believe the government followed the necessary procedures to establish its right to de novo review of the magistrate judge's legal conclusions.

Rule 72 of the Federal Rules of Civil Procedure governs matters assigned to a magistrate judge. Under either subsection (a) or subsection (b), the parties must object to the magistrate judge's determinations "[w]ithin 10 days after being served with a copy of the" order or proposed findings and recommendations. "[A] party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made." Fed. R. Civ. P. 72(a). Similarly, when objection is made to a magistrate judge's proposed findings and recommendations, the court is required to make a de novo determination only of "any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." Fed. R. Civ. P. 72(b). Local rules in the Eastern District of North Carolina likewise impose a ten-day limitation on objections to

18

a magistrate judge's determinations, see E.D.N.C. R. 63.01, 63.02, "unless a different time is prescribed by the magistrate judge or a judge." E.D.N.C. R. 63.01.

In this matter, the court ordered deadline for the government to file its appeal to the magistrate judge's determination was April 19, 1996. Thus, the government established its right to de novo review only to those portions of the magistrate judge's order to which specific objection was made on or before April 19. Before that deadline, the only objection made to the magistrate judge's order was that its "finding following a Franks hearing that false information was included in the search warrant affidavit knowingly and intentionally or with reckless disregard for the truth is contrary to fact and law." No objection was made to the magistrate judge's legal conclusion that the corrected Master Affidavit was insufficient to establish probable cause.

The government contends that it did not waive its right to appellate review of the magistrate judge's legal conclusion, citing (1) its October 24, 1995 Motion for Reconsideration, (2) its June 18, 1996 brief filed in support of its appeal, and (3) its August 12, 1996 brief filed with the district court in support of another Motion for Reconsideration. With respect to the two briefs, filed in June and August of 1996, it is clear that they were not filed in time to comply with the requirements of Rule 72 and Local Rule 63.00, which required that specific written objections to the magistrate judge's order be filed no later than April 19, 1996. Furthermore, an examination of the June 18 brief reveals that the government objected that a Franks hearing should not have been held, not that the post-hearing legal conclusions were erroneous. Similarly, the October 24, 1995 motion cannot be viewed as compliance with Rule 72 and Local Rule 63.00. That motion was presented to the magistrate judge, not the district court, and it was filed before there was ever a Franks hearing, not after the magistrate judge issued his order. Moreover, like the June 18 brief, the October 24 motion objected only to the holding of a Franks hearing. In short, we find nothing in the record to suggest that the government made timely and specific written objection to the magistrate judge's order on the second prong of the Franks inquiry.

The district court, nonetheless, found that "under United States v. George, and in an abundance of caution and fairness, the government

19

did not waive the right to a substantive review." However, we do not think that George required district court review in this matter. In George, we held that the district court must consider all arguments presented on an issue -- including those not presented to the magistrate judge -- so long as the objecting party has properly established its right to de novo district court review. We did not hold that parties can ignore the requirements of Rule 72 and nonetheless preserve their right to review of issues not properly appealed. 971 F.2d at 1118; see also United States v. Schronce, 727 F.2d 91, 93-94 (4th Cir. 1984); United States v. One Parcel of Real Property, 73 F.3d 1057, 1059-60 (10th Cir. 1996) (applying Schronce's "firm waiver rule" in spite of district court's sua sponte consideration of issues not specifically raised in objection).

AFFIRMED

20