[Cite as *State v. Hartung*, 2023-Ohio-1736.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

MATHEW RICHARD HARTUNG,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 22 BE 0029

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 20 CR 313

**BEFORE:**
David A. D'Apolito, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor, and *Atty. Jacob A. Manning*, Assistant Prosecuting Attorney, 52160 National Road, St. Clairsville, Ohio 43950, for Plaintiff-Appellee

*Atty. Sterling E. Gill, II,* 1544 East Broad Street, Suite 201, Columbus, Ohio 43203, for Defendant-Appellant.

Dated:  May 23, 2023

**D'Apolito, P.J.**

{¶1} Appellant, Mathew Richard Hartung, appeals the denial of his petition for postconviction relief by the Belmont County Court of Common Pleas. He advances three assignments of error.

{¶2} In his first two assignments of error, Appellant argues that the trial court abused its discretion and/or committed prejudicial error when it failed to conduct an evidentiary hearing and when it failed to make findings of fact and conclusions of law. In his third assignment of error, Appellant argues there was insufficient evidence to sustain his conviction after evidence of a due process violation was admitted at the sentencing hearing.

{¶3} For the following reasons, the judgment entry of the trial court denying the petition is affirmed.

## LAW

{¶4} Postconviction relief allows a petitioner to collaterally attack a criminal conviction by filing a petition to set aside the judgment, where the petitioner's constitutional rights were denied to such an extent the conviction is void or voidable under the Ohio or United States Constitutions. R.C. 2953.21(A); *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967); paragraph four of the syllabus. A common pleas court may grant relief from a conviction pursuant to R.C. 2953.21 et seq., where the petitioner proves that he suffered a violation of his constitutional rights during the proceedings resulting in the conviction.

{¶5} The petitioner has the initial burden to demonstrate in the petition, supporting affidavits, and the files and records of the case, that there are "substantive grounds for relief." R.C. 2953.21(C). Substantive grounds for relief exist if the petition presents a prima facie claim there was a constitutional violation. The petition must contain factual allegations that cannot be determined by an examination of the trial record. *State v. Milanovich*, 42 Ohio St.2d 46, 50, 325 N.E.2d 540 (1975).

{¶6} In resolving a post-conviction petition, a trial court may exercise one of three options:

Case No. 22 BE 0029

The first is to deny the petition without hearing, in accordance with the law as set forth in R.C. 2953.21 and the Ohio Supreme Court's decision in *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999). The second is to act on the state's motion for summary judgment by applying the standards set forth in Civ.R. 56. The third is to schedule an evidentiary hearing on [the defendant's] petition, at which time the trial court, as the trier of fact, is authorized to weigh the evidence and enter judgment.

*State v. Paige*, 7th Dist. Mahoning No. 17 MA 0146, 2018-Ohio-2782, ¶ 16.

**{¶7}** A post-conviction petition may be dismissed without a hearing where the claims are barred by res judicata. *State v. West*, 7th Dist. Jefferson No. 07 JE 26, 2009-Ohio-3347, ¶ 24. Res judicata bars any claim or defense that was raised, or could have been raised, in an earlier proceeding:

Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.

*Perry*, 10 Ohio St.2d at 180-181.

**{¶8}** Appellate courts review a trial court's ruling on a petition for postconviction relief for abuse of discretion. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. Abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

## FACTS AND PROCEDURAL HISTORY

**{¶9}** On March 4, 2021, Appellant was indicted for one count of drug trafficking (cocaine) in violation of R.C. 2925.03(A)(1), 2925.03(C)(4)(g), a felony of the first degree, with a major drug offender specification pursuant to R.C. 2941.1410(A) (in an amount at

least 370.41 grams); one count of drug possession (cocaine) in violation of R.C. 2925.11(A), 2925.11(C)(4)(f), a felony of the first degree, with a major drug offender specification pursuant to R.C. 2941.1410(A) (in an amount at least 370.41 grams); one count of drug trafficking (Alprazolam – the generic name for Xanax) in violation of R.C. 2925.03(A)(1), 2925.03(C)(2)(e), a felony of the first degree; one count of drug possession (Alprazolam) in violation of R.C. 2925.11(A), 2925.11(C)(2)(d), a felony of the first degree; and two counts of receiving stolen property in violation of R.C. 2913.51(A), 2913.51(C), felonies of the fourth (AR-15) and fifth (nine televisions) degrees. Two forfeiture specifications, pursuant to R.C. 2941.1417(A), are stated in the Indictment. The first specification seeks the forfeiture of fourteen long guns and eleven pistols, and the second seeks forfeiture of $14,989 in cash.

**{¶10}** The charges resulted from the execution of two search warrants at Appellant's residence at 4207 Trumbull St. in Bellaire, Ohio. The first search warrant was requested by Bellaire Police Department on November 16, 2020, and the second was requested by Bridgeport Police Department.

**{¶11}** The first search warrant was predicated in part on a controlled buy performed by Kelsey Garrett on October 29, 2020, at the behest of Bellaire Police Department officer, Gene Grim. Grim did not frisk Garrett on the video from Garrett's body camera prior to dispatching her from the Bellaire Police Department to Appellant's residence. Consequently, there is no evidence in the record that Garrett did not possess the two blue Xanax bars prior to arriving at Appellant's house.

**{¶12}** Of equal concern, the footage does not clearly depict the hand-to-hand exchange of product or money. Further, Appellant and Garrett do not openly discuss the alleged sale, but instead the details of Appellant's recent overdose, imprisonment, and hospitalization. Finally, the time stamp on the footage is the wrong date.

**{¶13}** More specifically, when Appellant answers the door of his residence, Garrett admires his braided hair, then tells him she heard that he was arrested. Immediately upon Garrett's entrance, Appellant reaches to the floor, then stands and reaches into what appears to be an article of clothing hanging behind him. In a single frame, Appellant appears to have something small and blue in his hand.

{¶14} As he regales Garrett with stories of his overdose (he purportedly overdosed on Xanax and hallucinated for eleven days), Garrett asks, "[i]s it seven or eight?" Although Appellant does not respond, the question can be interpreted as an inquiry regarding the cost of a single blue Xanax bar. Shortly thereafter, Appellant inquires, "[t]wo?" Although Garrett does not answer, the question can be interpreted to confirm that Appellant sold Garrett two Xanax bars. (Video at 9:19:07.)

{¶15} Further, as Garrett returns to the police station in her automobile, she engages in a stream of consciousness on the audio portion of the footage. At one point, Garrett says, "On my God. Grim what the fuck you got me doin'? Clearly you can see that there are bars." (Video at 9:23:39.) She holds a small, shiny packet in front of the body camera, but the footage does not clearly depict its contents. Further, upon her return to the police station, the video is black but the audio remains. Garrett asks, "Is that a whole bar?" Grim responds, "Yeah. It's a bar." Garrett replies, "I never knew that. Fuck me."

{¶16} According to Grim's affidavit in support of the first search warrant, Garrett purchased two blue Xanax bars from Appellant at a cost of $16.00. The affidavit further reads that Grim conducted surveillance of Appellant's house in the weeks following the controlled buy. Grim avers that he witnessed people going to the residence at all hours of the day and night. Grim further avers that he performed traffic stops of the automobiles leaving Appellant's residence, and the driver and/or the passengers in the automobiles informed Grim that they "were in the area to purchase Xanax from [Appellant]." (11/16/20 Aff., p. 2.)

{¶17} Grim was subsequently terminated from his position with the Bellaire Police Department, based on documented proof provided by Janae Snyder, a recidivist female drug offender and Appellant's girlfriend, of a sexual relationship between Grim and Snyder. Snyder asserted that she participated in the sexual relationship with Grim in exchange for Grim's willful ignorance of her drug crimes.

{¶18} According to Snyder's affidavit, which was attached to the motion to dismiss (addressed procedurally as a motion to suppress), Grim told Snyder that he intended to "set up" Appellant in order to remove Appellant as a rival for Snyder's affection. Grim told Snyder that she should not be affiliated with Appellant because he is a rapist. Following

Grim's termination, Snyder and a second woman filed and ultimately settled a federal civil rights lawsuit against Grim and the Bellaire Police Department.

{¶19} Grim admitted to the state that he had engaged in a consensual sexual relationship with Snyder after the execution of the second search warrant. According to a statement made at a pretrial hearing on Appellant's motion to disqualify J. Kevin Flanagan, the Belmont County prosecutor assigned to the case (his cousin, Richard Flanagan is the Chief of Bellaire Police Department), the state chose to "take [their] lumps in court" instead of allowing Appellant to use the inappropriate relationship as leverage in this case.

{¶20} At the suppression hearing, Grim, who had been terminated from the Bellaire Police Department and was under criminal investigation regarding the allegations in the federal civil rights action, asserted his Fifth Amendment right against self-incrimination. As a consequence, the sole witness offered by the state was Chief Flanagan, who oversaw Grim's investigation of Appellant.

{¶21} Chief Flanagan conceded that Grim did not record the two blue Xanax bars allegedly purchased from Appellant. Further, the two blue Xanax bars did not appear in the toxicology report provided by the state to the defense during discovery. However, it is important to note that Appellant was not charged for the sale of the two blue Xanax bars in the Indictment.

{¶22} Chief Flanagan further conceded that the hand-to-hand exchange of product for money was not clearly captured by the body camera, but he explained that drug deals are typically performed without any actual discussion, and the hand-to-hand exchange is performed surreptitiously to avoid surveillance. Chief Flanagan testified that Garrett was given $16.00 in buy money.

{¶23} In the post-hearing brief on the motion to dismiss/suppress, Appellant argued that Grim did not follow protocol for the controlled buy (although he cited no case law nor Bellaire Police Department regulations establishing the alleged protocol). Specifically, Appellant cited Grim's failure to frisk Garrett prior to the buy, Grim's failure to mark the money (typically done in a buy/bust scenario), and Grim's failure to include a clear depiction of the two blue Xanax bars allegedly purchased by Garrett in the body camera video. Appellant likewise challenged the failure of the body camera footage to

capture the exchange of product and money and the fact that the video bore a time stamp of "2008."

**{¶24}** Appellant further argued that Grim's invocation of the Fifth Amendment at the hearing effectively foreclosed Appellant's opportunity to demonstrate that Grim included intentionally or recklessly false statements in the affidavit. "To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either 'intentionally, or with reckless disregard for the truth.' " *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 31; citing *State v. Waddy*, 63 Ohio St.3d 424, 441, 588 N.E.2d 819 (1992); *Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). "Reckless disregard" means that the affiant had serious doubts about the truth of an allegation. *State v. Hilliard*, 7th Dist. Belmont No. 21 BE 0024, 2022-Ohio-2849, ¶ 39, appeal not allowed, 168 Ohio St.3d 1475, 2022-Ohio-4501, 199 N.E.3d 559, ¶ 39, citing *United States v. Williams*, 737 F.2d 594, 602 (C.A. 7, 1984). Omissions count as a false statement if "designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate." (Emphasis deleted.) *Hilliard*, quoting *United States v. Colkley*, 899 F.2d 297, 301 (C.A. 4, 1990).

**{¶25}** The trial court overruled the motion to dismiss/suppress, finding that the contents of Grim's affidavit were sufficient to demonstrate probable cause for the issuance of the first search warrant. The trial court likewise overruled the motion to disqualify the Belmont County Prosecutor's Office.

**{¶26}** Ultimately, the state agreed to amend the first count of the Indictment to aggravated trafficking in violation of R.C. 2925.03(A)(1), a felony of the first degree, and dismiss the major drug offender specification related to count one, as well as all of the other charges in exchange for Appellant's no contest plea. The parties stipulated to an agreed sentence of eight to twelve years at the plea hearing.

**{¶27}** At the sentencing hearing, defense counsel offered into evidence the undated affidavit of Garrett, which is signed but not sworn. The affidavit reads, in relevant part:

> In an attempt to avoid some legal problems that I had, Officer Gene Grimm
> [sic] said that he would make those problems go away, if I would help him

set up [Appellant]. So, on or about 10/29/2020, I went to 4207 Trumbull St. in Bellaire, Ohio with an audio/video device and $16 cash given to be by Officer Grimm [sic]. I did have two (2) Xanax bars on my person and was not searched by Officer Grimm [sic] before I arrived at [Appellant's] house. After I left his house, I ate one (1) of the Blue Xanax bars and gave the other one (1) to Officer Grimm [sic].

The copy of the identical affidavit, sworn on March 21, 2022 by a notary public, is attached to the petition.

{¶28} At the sentencing hearing, defense counsel warranted that he had received the affidavit for the first time when he entered the courtroom. Based on the affidavit, defense counsel requested that Appellant be permitted to convert his no-contest plea into an *Alford* plea. The trial court overruled the oral motion, and observed, "Don't see the significance, quite frankly." (Plea Hrg., p. 6.)

{¶29} Significantly, defense counsel did not make an oral motion to withdraw Appellant's plea or request a continuance of the sentencing hearing to file a written motion to withdraw plea based on the averments in the affidavit. Instead, Appellant participated in the sentencing hearing without objection.

{¶30} Appellant filed his petition on April 14, 2022. Appellant filed his direct appeal on April 20, 2022 ("22 BE 0018"). The state did not respond to the petition, and as a consequence, Appellant filed a motion for summary judgment on the petition on May 9, 2022. On May 26, 2022, the trial court denied the petition for the following reasons:

[Appellant] has failed to establish the purported [Garrett affidavit], contains newly discovered evidence that could not have been available earlier through due diligence.[1] In fact, that form, although then unsigned [it was

---

[1]The trial court appears to conflate evidence de hors the record with newly discovered evidence. R.C. 2953.23, captioned "Second or successive petitions; order; appeal," which governs both second successive petitions, as well as untimely petitions, reads, in relevant part:

signed but not sworn], appears to be the same one presented to the Court earlier when [Appellant] asked to convert his No Contest plea to an *Alford* plea. Thus, if [Appellant] wanted a trial, he could have called [Garrett] to testify.

Furthermore, the record contains sufficient information to counter that purported Affidavit and to support all of the decisions of the Court.

Based upon the entire record, [Appellant] has failed to establish any substantive grounds for relief. As a consequence, he is not entitled to an oral hearing and his Petition is without merit.

(5/26/22 J.E., p. 1.) This timely appeal followed.

---

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

Case No. 22 BE 0029

**{¶31}** On October 28, 2022, prior to the filing of Appellant's brief in 22 BE 0018, Appellant filed a motion to dismiss his direct appeal. The motion reads, in relevant part, "After careful review of the facts and circumstances, and due to issues being similar in [the above-captioned appeal], Appellant has decided against further pursuing this matter." This Court granted the motion to dismiss Appellant's direct appeal on November 7, 2022.

## ANALYSIS

**{¶32}** Appellant voluntarily dismissed his direct appeal prior to briefing. He predicated the dismissal of his direct appeal on the fact that his arguments there mirrored the arguments he advances here.

**{¶33}** However, res judicata bars all claims that could have been raised on direct appeal, even where no direct appeal is taken, with the sole exception of claims for ineffective assistance of counsel. *State v. Staples*, 2nd Dist. Greene No. 2013-CA-52, 2014-Ohio-2556, ¶ 28. Insofar as Garrett's affidavit was a part of the record on direct appeal, res judicata bars Appellant from raising his constitutional claim in a post-conviction petition.

**{¶34}** Appellant writes, "[t]he newly discovered evidence submitted herewith was not available for use in [Appellant's] last hearing as [Appellant] had no knowledge that [Garrett] played the significant role she played until after Petitioner was sentenced." (Pet., p. 7.) However, Appellant confuses newly-discovered evidence (required for a second, successive, or untimely petition), with evidence outside of the record (required for a post-conviction petition).

**{¶35}** Garrett's affidavit was a part of the record on direct appeal, having been identified and marked as an exhibit at the sentencing hearing. Therefore, any due process argument based on the Garrett affidavit could have been raised in his direct appeal. Accordingly, we find that Appellant's petition is barred by res judicata. Assuming arguendo that the petition is not procedurally barred, we find for the following reasons that Appellant's assignment of error have no merit.

Case No. 22 BE 0029

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY NOT MAKING FINDINGS OF FACT AND CONCLUSIONS OF LAW TO EACH GROUND SET FORTH IN APPELLANT'S PETITION ACCORDING TO *STATE V. MAPSON*, 1 OHIO ST.3D 217, 219, 438 N.E.2D 910, AND *STATE V. LESTER* (1975), 41 OHIO ST.2D 51.**

{¶36} R.C. 2953.21(H), provides in pertinent part, "If the court does not find grounds for granting relief, it shall make and file findings of fact and conclusions of law and shall enter judgment denying relief on the petition." Here, the trial court plainly stated the facts and case law upon which the dismissal of the petition was predicated.

{¶37} First, the trial court concluded that the petition was barred by res judicata (although the trial court based its conclusion on the dearth of newly discovered evidence rather than the fact that the petition was predicated upon evidence within the record of a direct appeal). Next, the trial court addressed the substantive grounds, finding that the Garrett affidavit was directly contradicted by the body camera footage of the controlled buy. Accordingly, we find that the trial court complied with the post-conviction statute and that Appellant's first assignment of error is meritless.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY NOT ORDERING AN EVIDENTIARY HEARING THAT WOULD HAVE PROVEN, *INTER ALIA*, APPELLANT WAS ENTITLED TO AN *ALFORD* PLEA.**

{¶38} Appellant asserts that the trial court abused its discretion in declining to conduct a hearing on the petition. Rather than arguing that the petition contained prima facie evidence of a constitutional violation, Appellant argues that a hearing was required in order for Appellant to demonstrate that he should have been permitted to convert his no contest plea into an *Alford* plea.

**{¶39}** A plea of guilty is a complete admission of the defendant's guilt. Crim.R. 11(B)(1). A plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint and such plea or admission cannot be used against the defendant in any subsequent civil or criminal proceedings. Crim.R. 11(B)(2). Typically, a defendant will enter a no contest plea in order to preserve an appeal on a pre-trial motion. In a plea entered pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160 (1970), the defendant, while maintaining his innocence, pleads guilty to some offense in order to lessen the possible penalty from what it might be were he convicted as charged.

**{¶40}** Appellant raises his argument regarding the conversion of his plea for the first time on appeal. The petition asserts a single constitutional challenge, that is, his conviction is supported by "tainted evidence in violation of the Fourteenth Amendment." (Pet., p. 2.)

**{¶41}** Generally, errors not raised in the trial court cannot be raised for the first time on appeal. *State v. Anderson*, 7th Dist. Belmont No. 14 BE 0041, 2016-Ohio-4651, ¶ 14. However, an appellate court may still review the record for plain error. *State v. Ferrara*, 7th Dist. Mahoning No. 14 MA 4, 2015-Ohio-3822, ¶ 23.

**{¶42}** "The power afforded to notice plain error, whether on a court's own motion or at the request of counsel, is one which courts exercise only in exceptional circumstances, and exercise cautiously even then." *State v. Long*, 53 Ohio St.2d 91, 94, 372 N.E.2d 804 (1978). A plain error is one that is: (1) an obvious defect in a proceeding, (2) that deviates from a legal rule, (3) which in turn affects a substantial right of the party. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16. Appellant does not articulate any prejudice that he suffered as a result of the trial court's denial of his oral motion to convert his plea. Accordingly, we find that Appellant's second assignment of error is meritless.

## ASSIGNMENT OF ERROR NO. 3

**THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AFTER EXCULPATORY [SIC] AFFIDAVIT WAS SUBMITTED.**

**{¶43}** In his final assignment of error, Appellant challenges the trial court's substantive conclusion that the petition does not demonstrate a prima facie constitutional claim. Appellant contends that the first search warrant, which yielded evidence of Appellant's crimes, was predicated upon fabricated evidence regarding the controlled buy. However, Garrett's body camera footage depicts an exchange of a blue product, an inquiry by Garrett regarding the price of the product, and an inquiry regarding the amount of the product requested by Garrett. Further, Garrett's assertion that she had the two blue Xanax bars on her person prior to the controlled buy is contravened by her statement to Grim at the conclusion of the body camera footage that she was unfamiliar with Xanax bars. Based upon a review of the body camera footage, we find that the trial court did not abuse its discretion in concluding that the petition fails to state a prima facie claim for a due process violation.

## CONCLUSION

**{¶44}** For the foregoing reasons, we find that Appellant's petition is barred by res judicata, or in the alternative, the trial court did not abuse its discretion in denying the petition for postconviction relief. Accordingly, the judgment entry of the trial court denying the petition is affirmed.

Robb, J., concurs.

Hanni, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**